[No. 10001.  Department One.  August 21, 1912.]

J. H. MOHNEY, *Appellant*, v. THOMAS H. ELLIS *et al.*,
*Respondents.*[1]

MORTGAGES—REDEMPTION—AGREEMENT—ESTOPPEL. A redemption from a mortgage foreclosure will be decreed in favor of heirs owning a half interest in the land, where the purchaser at the foreclosure sale had agreed to assign the sheriff's certificate of sale upon payment of the judgment and to make a quitclaim to one of the heirs, to enable him to negotiate a loan on the property on behalf of minor heirs in order to effect the redemption; and after permitting the time for a regular redemption to expire, the purchaser is estopped to repudiate the agreement upon tender of the sum due, although proceedings to redeem were not taken in the manner required by statute.

Appeal from a judgment of the superior court for Whitman county, Miller, J., entered May 20, 1911, upon findings in favor of the defendants, in an action of ejectment, grant-

[1] Reported in 125 Pac. 1031.

ing redemption from a mortgage foreclosure as prayed by interveners, after a trial to the court. Affirmed.

*J. N. Pickrell,* for appellant.

*U. L. Ettinger* and *D. C. Dow* (*Chas. F. Voorhees,* of counsel), for respondents.

CROW, J.—On January 5, 1903, Thomas H. Ellis and Sarah C. Ellis, his wife, the owners of three hundred and twenty acres of land in Whitman county, their community property, mortgaged the same to Ladd & Bush, to secure their note for $4,500. Sarah C. Ellis died intestate on or about September 17, 1906, leaving surviving her Thomas H. Ellis, her husband, and certain children of herself and husband, hereinafter mentioned. On March 4, 1908, Ladd & Bush commenced an action in the superior court of Whitman county to foreclose the mortgage. A decree was entered, and on June 13, 1908, the land was sold by the sheriff of Whitman county to J. M. Mohney, the plaintiff herein. Subsequent to the foreclosure, Thomas H. Ellis leased the land to R. W. Hall, who raised a crop of wheat thereon. On June 19, 1909, a sheriff's deed was executed and delivered to Mohney, and on August 11, 1909, he commenced this action against Thomas H. Ellis and R. W. Hall, to recover possession and for other relief.

On October 22, 1909, Lon L. Ellis, of the age of majority, son of Thomas H. Ellis and Sarah C. Ellis, deceased, and brother of Elmer T. Ellis, Elga J. Ellis, Dora A. Ellis, and Claude H. Ellis, all of whom were minor children and heirs at law of the deceased, petitioned the court to appoint a guardian *ad litem* for the minor heirs, alleging that he and they claimed an interest in the real estate. The petition was granted, the guardian *ad litem* was appointed, and with leave of court Lon L. Ellis and the minor heirs by their guardian *ad litem* filed their complaint in intervention. The defendant Thomas H. Ellis in his answer, and interveners in their complaint in intervention, pleaded their interest in the real

estate, alleged that they were entitled to redeem, and had in
equity redeemed from the sheriff's sale, demanded that the
sheriff's deed be canceled, and that their title be quieted.
There is no contest between Thomas H. Ellis and the inter-
veners as to their respective interests. The facts upon which
they predicated their claim need not be now mentioned. They
were substantially found by the trial judge as hereinafter
stated. From a decree canceling the sheriff's deed and
quieting title in the defendant Thomas H. Ellis and the in-
terveners, the plaintiff has appealed.

Most of the assignments of error involve the contention
that the facts found by the trial court are not supported by
the evidence. We have carefully examined the evidence and
conclude the findings must be sustained. While in many in-
stances these findings rest upon the oral evidence of J. H.
Ellis, as against appellant's testimony, yet we conclude
the preponderance is in favor of the findings made, as the
statements of J. H. Ellis harmonize more perfectly with un-
disputed facts and circumstances, and are corroborated by
other witnesses. The trial judge saw the witnesses, observed
their demeanor, passed upon their credibility, and found in
favor of the respondents. From his findings, which must be
sustained, the following facts appear, in addition to the
foreclosure proceedings above stated: That about six weeks
before the year of redemption had expired, to wit, on or about
May 1, 1909, J. H. Ellis, acting for Thomas H. Ellis and
the interveners, asked appellant if he would accept a mort-
gage on the land for the sum necessary to redeem; that ap-
pellant replied he would require the money; that J. H. Ellis
then informed appellant he could obtain the money to redeem,
but that he would have to raise it by mortgage upon the land;
that as there were minor heirs who could not execute a mort-
gage, it would be necessary for him to acquire the title, exe-
cute the mortgage, and then convey to Thomas H. Ellis and
the heirs; that for such purpose it would be necessary that
appellant assign the certificate of sale and make a quitclaim

deed to J. H. Ellis; that appellant then told J. H. Ellis that would be satisfactory; that he would assign the certificate of sale and execute the quitclaim deed upon payment to him of the money due on the redemption; that, relying upon appellant's promise and agreement, J. H. Ellis, acting for the respondents, negotiated from Balfour-Guthrie & Company a loan for a sum sufficient to pay appellant; that he temporarily borrowed $7,948.80 from a Colfax bank, the amount due appellant on his certificate of sale to June 12, 1909, inclusive, and on that day tendered the same to appellant in the form of a certificate of deposit issued by the bank, payable to appellant, and requested appellant to assign the certificate of sale, and execute the quitclaim deed; that appellant did not except to the amount or form of the tender, but did refuse to assign the certificate of sale or to execute the deed, and at the time stated that he believed J. H. Ellis was attempting to defraud the minor heirs and deprive them of their interest in the land; that at all times while J. H. Ellis was attempting to redeem the land, appellant well knew he was acting for Thomas H. Ellis and the interveners; that the respondents, relying on appellant's promise made to J. H. Ellis, did not give the statutory notice to redeem; that when appellant declined the tender and refused to assign the certificate or execute the quitclaim deed, it was too late to give such notice; that, on account of appellant's failure to perform his agreement, J. H. Ellis could not mortgage the land to Balfour-Guthrie & Company; that relying on appellant's agreement, neither J. H. Ellis nor the respondents made any effort, other than those above stated, to raise the money with which to redeem; that on October 18, 1909, after the commencement of this action, respondent's attorney tendered appellant $8,175.05 in gold coin, for the purpose of preserving the tender theretofore made, and for the further purpose of redeeming the land; that $8,175.05 thus tendered covered the entire amount then due appellant, including taxes and interest; that the tender last mentioned was refused, but that respondents forthwith

deposited the same with the clerk of the superior court for payment to appellant, and that on June 12, 1909, when the first tender was made, the fair market value of the land was $20,000.

Upon these facts, we fail to understand how any court of equity could enter a decree other than the one of which appellant now complains. The appellant relies on the fact that no redemption was made in the manner or within the time provided by statute, that the sheriff's deed was issued, and that the respondents have lost all their rights. He testified that on June 12, 1909, when the first tender was made, he believed that J. H. Ellis, who made the tender, was defrauding the minor heirs; that, if they were not to have the land, he thought he might as well have it himself; that he then told J. H. Ellis to pay the money to the sheriff to whom he would then surrender his certificate of sale. There was not a shadow of proof nor a syllable of evidence, outside of appellant's suspicions stated by himself, which tended to show or even suggest that J. H. Ellis intended to defraud the minor heirs. Appellant claims he wanted to protect the minor heirs, yet he made no effort to do so by any practical method or procedure, nor did he attempt to find a trustee whom he could trust. On the contrary, he asserted and still asserts his right to hold land worth $20,000 which but for his acts, the respondents might otherwise have arranged to redeem for about $8,000. When on June 12, 1909, appellant directed J. H. Ellis to pay his borrowed money to the sheriff, he well knew that J. H. Ellis had perfected his plans in the belief that he was to obtain the title, upon which he could by mortgage obtain funds to repay the money he had temporarily borrowed from the bank before he conveyed the title to the respondents. He also knew that, if the money J. H. Ellis had borrowed from the bank should be paid to the sheriff, and appellant should surrender to the sheriff the certificate of sale, and should at the same time waive the statutory notice to redeem, which he did not agree to do, the title would pass

to respondents a number of whom were minors and could not secure J. H. Ellis by a mortgage lien for the money which he would thus advance. At that late day appellant was in no position to insist that J. H. Ellis should proceed in any such manner, knowing as he did that J. H. Ellis and the respondents had all acted in good faith upon his promise and agreement to assign the certificate of sale and execute the quitclaim deed.

Citing §§ 594, 595, and 599, Rem. & Bal. Code, appellant argues that the only right a judgment debtor has remaining after an execution sale is the statutory right of redemption, which must be asserted in the exact manner and within the limit of time prescribed by the statute. He further insists that the statutory method to be available must be strictly pursued. Even though no criticism be made on this contention, it will not avail appellant. Respondents' failure to redeem within the statutory period, or by exact compliance with the statutory method, resulted from appellant's acts which misled them into the belief that he would cause the title to vest in J. H. Ellis so that he might mortgage the land, raise the redemption money advanced by him, and then in turn permit respondents to redeem by accepting the title subject to the mortgage lien, for the satisfaction of which the land then worth $20,000 would have been primarily liable and ample security. In other words appellant, with the assistance of J. H. Ellis who was acting for respondents, agreed upon a procedure for redemption other than that provided by the statute, and then refused to perform his agreement when it was too late for respondents to perfect other arrangements or give the statutory notice. Agreements to extend the time for redemption have been repeatedly enforced by courts of equity, and we see no reason why appellant's agreement to change the form of procedure for redemption should not be likewise enforced.

"So, if any agreement is entered into subsequently to the sale, though by parol, the substance of which is that the pur-

chaser, or other holder of the certificate of sale, will treat it as a mere security, or will give a definite time in which to redeem, it will be enforced. The effect of such an agreement is to prevent any effort on the part of the debtor to redeem within the time designated by the statute; and not to enforce it in his favor, when it had been the means of lulling him into inaction, would be to pervert it into a cruel and fatal decoy. This the courts will not permit, nor will they heed the plea that the contract cannot be received in evidence because within the statute of frauds." 3 Freeman, Executions (3d ed.), p. 1859, § 316.

In *Newman v. Locke*, 66 Mich. 27, 36 N. W. 166, the court, in holding that the time for redemption should be extended, said:

"The equity of redemption was of considerable value, and a relinquishment of it would have been too great a sacrifice to make, unless it was absolutely hopeless to save it. Considering all the testimony, it has convinced me that complainant, from the acts and conversation of defendants, was led to giving up efforts to get money in other quarters, and to rest on the assurance that his interests were secure from further peril."

In the recent case of *Murphy v. Teutsch* (N. D.), 132 N. W. 435, the supreme court of North Dakota, citing authorities, stated the equitable rule, saying:

"The power of courts of equity to give relief in certain class of cases and permit a redemption of real estate sold under execution after the statutory period of redemption has expired has been generally recognized, and such power has been exercised when a proper state of facts required it. See *Prondzinski v. Garbutt*, 8 N. D. 191, 77 N. W. 1012; *Laing v. McKee*, 13 Mich. 124, 87 Am. Dec. 738; *Wilson v. Eggleston*, 27 Mich. 257; *Graffman v. Burgess*, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. Ed. 839; *Schroeder v. Young*, 161 U. S. 334, 16 Sup. Ct. 512, 40 L. Ed. 721; *Hart v. Seymour*, 147 Ill. 598, 35 N. E. 246. Such power has been exercised by courts of equity most frequently upon a sufficient showing of either fraud, accident or justifiable mistake."

The controlling question before us is whether appellant did in fact agree to accept the money which would be due him on redemption, and in lieu of the regular statutory method of redemption, did further agree to assign the certificate of sale and make a quitclaim deed to J. H. Ellis. The evidence shows, and the trial court found, that he did. This being true, he cannot, in a court of equity, now assert his right to the land, nor can he now deny respondents' right to redeem, or that in equity they did redeem within the statutory period. The following cases, although not decided on facts entirely similar, announce equitable principles which should be controlling in this action: *Union Mut. Life Ins. Co. v. Kirchoff*, 133 Ill. 368, 27 N. E. 91; *Chytraus v. Smith*, 141 Ill. 231, 30 N. E. 450; *Butt v. Butt*, 91 Ind. 305.

The judgment is affirmed.

DUNBAR, C. J., PARKER, and GOSE, JJ., concur.