[No. 19274. Department Two. November 3, 1925.]

MARIE KRITZER, *Individually and as Administratrix etc., et al., Respondents*, v. A. J. MOFFAT, *Appellant.*[1]

FRAUDS, STATUTE OF (9)—REAL PROPERTY—CREATION OF ESTATES OR INTERESTS—TRUSTS—ORAL PROMISE WITH INTENT TO DEFRAUD. The statute of frauds is no defense to an action for deceit, based upon oral promises by the purchaser at a mortgage foreclosure sale to extend the time for redemption, made in bad faith with intent to deceive and without intent to keep the promises, whereby the owners were induced to forbear their right of redemption and lost the land, since the action is one for deceit and not on contract.

ELECTION OF REMEDIES (1)—CAUSES OF ACTION AND REMEDIES SUBJECT TO ELECTION—LAW AND EQUITY. Upon deceit practiced upon plaintiffs by promises made in bad faith without any intent to keep the promises, which were to extend the time for redemption of land, the plaintiff has a choice of remedies and may sue in equity for the specific relief promised, or at law for damages.

[1]Reported in 240 Pac. 355.

FRAUD (1)—ELEMENTS OF ACTUAL FRAUD—PROMISSORY STATEMENT WITH INTENT TO DECEIVE. Promissory statements made in bad faith with intent to deceive without intent to keep the promises, may be made the basis of an action for fraud.

APPEAL (414)—REVIEW—VERDICTS—CONCLUSIVENESS. The verdict of a jury upon conflicting evidence will not be disturbed on appeal when supported by substantial evidence.

TRIAL (93)—INSTRUCTIONS—APPLICATION TO CASE—PLEADINGS AND ISSUES. Error cannot be assigned on the refusal to give a cautionary instruction that no confidential relations existed between the parties, where there was no claim or evidence that there were any such relations.

SAME (102)—INSTRUCTIONS PARTLY ERRONEOUS. It is not error to refuse a requested instruction that was partly erroneous.

LANDLORD AND TENANT (4)—EXISTENCE OF RELATION—EVIDENCE. A receipt for rent is competent, but not conclusive, evidence of the existence of the relation of landlord and tenant.

FRAUD (23)—DAMAGES—MEASURE AND AMOUNT—EXCESSIVE DAMAGES. In an action for deceit whereby plaintiffs were induced to forbear the right of redemption and lost their land, the measure of damages is the difference between the market value at the time the right of redemption expired and the sum required to effect a redemption.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 10, 1924, upon the verdict of a jury rendered in favor of the plaintiff, in an action for deceit; affirmed on condition of remitting part of the verdict, in lieu of awarding a new trial.

*Tucker, Hyland & Elvidge, Bronson, Robinson & Jones,* and *Mary H. Alvord,* for appellant.

*Longfellow & Fitzpatrick* and *McClure & McClure,* for respondents.

FULLERTON, J.—On November 19, 1915, the respondent Marie Kritzer and the defendant Otto Reinig, respectively the administratrix and administrator with the will annexed of the estate of Joe Kritzer, deceased, borrowed from the appellant, A. J. Moffat, the sum of

fifteen hundred dollars, mortgaging to secure the loan certain real property belonging to the estate. No part of the mortgage indebtedness, except the sum of twenty dollars was paid; and on February 19, 1919, the mortgagee instituted a suit to foreclose the mortgage. The foreclosure proceedings are concededly regular. The administratrix, the administrator, the heirs at law of the estate, as well as all persons having liens on the mortgaged property, were made parties defendant to the suit, and personal service was had upon each of them. Each and all of the defendants made default, and on March 24, 1919, a decree was entered foreclosing the mortgage.

Following the decree, namely, on May 3, 1919, the property was sold by the sheriff of the county in which the decree was entered, at which sale the mortgagee became the purchaser of the property, bidding therefor the full amount of his note and mortgage, with interest costs and attorney's fees, and receiving from the sheriff a certificate of sale. No redemption from the sale was made, and after the year allowed by statute for that purpose had expired, namely, on May 18, 1920, the sheriff executed a deed to Moffat as the purchaser of the property and the then holder of the certificate of sale. Subsequently, on November 18, 1921, Moffat sold the property and conveyed it by warranty deed to one Louis A. Wade. The respondent Marie Kritzer is the widow of Joe Kritzer, deceased. At the time of his death, she was living on the property with him. Subsequent thereto, she remained in possession until after its sale to Wade, when she was ousted by a writ of assistance, issued pursuant to the foreclosure decree, at the instance of Wade.

The present action was brought by Mrs. Kritzer and the adult heir of the estate, Adolph Kritzer, to

recover in damages against Moffat as for fraud and deceit arising out of transactions occurring subsequent to the foreclosure and sale. Mrs. Kritzer sues in her own right, and as administratrix of her husband's estate and as the guardian *ad litem* of the minor heir of his estate. The other adult heir of the estate, Marie Kritzer Vezzoni, and the administrator, Reinig, refused to join as parties plaintiff, and were made parties defendant to the action. No affirmative relief, however, was asked of the last named defendants; they were made defendants merely because they refused to join as plaintiffs.

The gravamen of the cause of action stated in the complaint, aided by the proofs adduced on behalf of the plaintiffs at the trial, is, in substance this: After the sale of the land under the decree of foreclosure, but prior to the time the right of redemption therefrom had expired, Mrs. Kritzer desired, on behalf of herself and the heirs interested in the estate, to redeem the property from the sale. To that end, she went to a local bank and secured the promise of a loan on the security of the property sufficient in amount to pay the amount due on the decree with interest and costs. She was then ignorant of the procedure necessary to effect a redemption, and meeting Moffat a few days later, told him of her desire to redeem, and that the money necessary for that purpose was waiting him at the bank. That Moffat then told her that it was unnecessary to borrow money for that purpose; that he did not need it and did not want it; that all she needed to do was to pay the interest on the indebtedness and the taxes on the property; that he would wait until the youngest child was of age for the principal sum, at which time the administration on the estate of her husband could be closed, and all of the matters settled up. That, later on and before

the time for redemption had expired, she again called on Moffat and again requested him to take the money and permit a redemption; and that he again assured her that a redemption was unnecessary, and repeated his former statements, making the further statement that the foreclosure proceedings had been stopped. That she believed his statements and relied upon his promises, and believing and relying thereon, paid to him the sum of one hundred and forty dollars as interest on the loan, and the further sum of forty-eight dollars to reimburse him for taxes he had paid on the property; that she desired to pay the costs and disbursements of the foreclosure proceedings, and that Moffat informed her that these could be paid to his attorney who had knowledge of the matters; that she called upon the attorney and tendered him the money therefor, but that he refused to accept it, saying that he had no authority from his client so to do.

It is then alleged that all of these statements and promises made by Moffat were made without intent on his part that they would be kept, but were made for the purpose of lulling Mrs. Kritzer into security, so that no redemption of the property would be made, and that Moffat could obtain the property for the amount of the mortgage and costs of foreclosure, a sum grossly disproportionate to the value of the property. That Moffat, disregarding his promises, did obtain a deed to the property when the time for redemption expired, and subsequently sold the property to an innocent purchaser, thus cutting off the right of the plaintiffs to reclaim the property. It is further alleged that the value of the property was and is the sum of twenty-seven thousand, five hundred dollars, and that the plaintiffs have been damaged in a sum equal to the difference between the amount of the mortgage and such value.

The allegations of the complaint were put in issue by Moffat, and a trial had before a jury, who returned a verdict for the plaintiffs in the sum of sixteen thousand dollars. On a motion for a new trial, however, the trial court found the verdict excessive, and gave the plaintiffs the option of accepting a verdict for eleven thousand dollars or of submitting to a new trial. The plaintiffs elected to accept the verdict as reduced, and a judgment was entered in that sum. Moffat appeals.

The appellant contends that the complaint does not state facts sufficient to constitute a cause of action. It is contended that the transaction recited in the complaint as occurring between Mrs. Kritzer and the appellant constitutes an oral contract and is void for a number of reasons, the principal one being that it is within the statute of frauds. If this were a correct view of the nature of the plaintiffs' cause of action, the arguments would unquestionably have force, but we cannot think it a correct view. The plaintiffs do not declare upon a breach of contract; in fact, they do not allege that a contract was ever entered into. Their allegations are, in effect, that the appellant made certain representations and certain promises with reference to matters then under consideration between them, which representations were false and which promises he then had no intention of keeping or performing, for the purpose of inducing the plaintiffs to forbear in the exercise of a right which then belonged to them, the forbearance of which would redound to the benefit of the appellant by enabling him to acquire an unlawful gain; that the plaintiffs believed the representations, and believed that the appellant would keep the promises, and, so believing, acted thereon to their injury. In other words, the action is one founded on fraud and deceit, and not on a breach of a contract.

That such an action will lie, the authorities generally hold.

In *Swift v. Rounds,* 19 R. I. 527, 35 Atl. 45, 61 Am. St. 791, 33 L. R. A. 561, the action was in trespass on the case for deceit. It was alleged in the declaration that the defendant, intending to deceive and defraud the plaintiffs, did buy of them on credit certain goods and chattels of the value of four hundred dollars, the defendant not then and there intending to pay for them, but intending wickedly and fraudulently to cheat the plaintiffs. On demurrer for want of sufficient facts, it was held that a cause of action was stated; the court using this language:

"In the case at bar, the declaration alleges that the defendant bought the goods in question upon credit, fraudulently intending not to pay for them but to cheat the plaintiffs out of the value thereof. By the act of buying the goods of the plaintiffs the defendant impliedly promised to pay for the same, which promise was equally as strong and binding as though it had been made in words, or even in writing. The plaintiffs had the right to rely on this promise, and to presume that it was made in good faith. It turns out, however, according to the allegations aforesaid, that it was not made in good faith, but, on the contrary, was made for the purpose of deceiving the plaintiffs into the act of parting with their goods, the defendant intending by the transaction to cheat them out of the value thereof. The fraud, then, consisted in the making of the promise, in the manner aforesaid, with intent not to perform it. By the act of purchasing the goods on credit, the defendant impliedly represented that he intended to pay for them. The plaintiffs relied on this representation, which was material and fraudulent, and were damaged thereby. All the necessary elements of fraud or deceit therefore were present in the transaction. . . . But the authorities are overwhelming to the effect that it is fraud to purchase goods intending not to pay for them, and that the vendor, upon discovering the fraud, may repudiate

the sale and reclaim the property, or may sue in trover, or in some other action of tort, for the damages sustained by the fraud. And this being so, we fail to see why an action of deceit, which is an action of tort, based on fraud, may not lie as well. For to obtain goods on credit, intending not to pay for them, is as much a trick or device as it would be falsely to represent in words any material fact whereby the vendor should be induced to part therewith.''

In *Goodwin v. Horne,* 60 N. H. 486, the action was upon promissory notes. The defendants set up want of consideration, and that the notes were procured by fraud. The notes were given for the right to make and sell a patent spring-bed, and the fraud alleged consisted of a promise to buy beds at a profit to the defendant, and were made with no intention of performance, but as an inducement to the sale. The court said:

''The rule that parol evidence is inadmissible to vary the terms of a written contract, does not exclude evidence of a want of consideration, illegality, or fraud, when a defence is made on any one of these grounds. Although the agreement of the payee to buy five hundred beds at a profit to the defendant, and in payment of the notes, was no part of the consideration, it was an inducement to the sale of the invention for which the notes were given. Ordinarily false promises are not fraudulent, nor evidence of fraud, and only false representations of past or existing facts are actionable, or can be made the ground of defence. *Long v. Woodman,* 58 Me. 49; *Murray v. Beckwith,* 48 Ill. 391; *Loupe v. Wood,* 51 Cal. 586; *Jorden v. Money,* 5 H. L. Cas. 185; Cool. Torts 486. But when a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defence. Such are cases of concealed insolvency, and purchases of goods with no intention to pay for them. *Bradley v. Obear,* 10 N. H. 477.''

In *Laing v. McKee*, 13 Mich. 124, 87 Am. Dec. 738, a suit was brought to compel the defendant to convey to the complainant certain lands which had been bought by the defendant at a tax sale. The complainant, having the right to redeem, allowed the time for redemption to expire without redeeming, on the strength of an oral agreement by the defendant to assign to him the certificate of sale. This undertaking the defendant breached. It was objected by him that the agreement was a parol contract to convey land and therefore void. The court by Cooley, J., said:

"We do not think this case is to be put on the ground of specific performance solely. The facts charged and established show that complainant, relying upon the promise of defendant to assign, neglected to exercise his legal right to redeem, and defendant was thereby enabled to obtain a deed of the lands. It sufficiently appears that complainant would have made the redemption but for the assurances thus made to him, and a fraud has thus been perpetrated upon him, against which he is entitled to relief. It is a matter of no moment whether the fraud was perpetrated by means of a promise upon which he relied, and which the defendant did not intend to keep, or by untrue statements as to existing facts. And it is not necessary for us to decide, in this view of the case, whether the agreement to assign the certificate was or was not void under the statute of frauds."

In *Clarkson v. Pruett*, 201 Ala. 632, 79 South. 194, the action was in ejectment. It was defended that the deed under which the plaintiff claimed had been procured by fraud, in that the plaintiff, a young woman, had induced the grantor, an old man, to execute the deed in consideration of her promise to marry him, a promise she had no intention to perform. The trial court sustained the defense and the plaintiff appealed. The court said:

"Fraud must relate to an existing fact; but the authorities sustain the proposition that, if a man buys property on credit, having at the time the intention not to pay for it, his promise to pay is a false token whereby fraud is effected. The real fraud is the expressed or implied false representation of his intention to pay. *McCready v. Phillips,* 56 Neb. 446, 76 N. W. 885; *Dowd v. Tucker,* 41 Conn. 197; *Goodwin v. Horne,* 60 N. H. 485; *Chicago, T. & M. Ry. Co. v. Titterington,* 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39. To the same effect we cite the note (e) to section 877 of the junior Pomeroy's third edition of Pomeroy's Equity Jurisprudence, where it is said that a promise, made with the intention in the mind of the promisor not to perform, may be a misrepresentation of a subsisting fact, and hence a fraud, referring to *Edgington v. Fitzmaurice,* L. R. 29 Ch. Div. 459, *Becker v. Schwerdtle,* 141 Cal. 386, 74 Pac. 1029, *Brison v. Brison,* 75 Cal. 527, 17 Pac. 689, 7 Am. St. Rep. 189, *McCready v. Phillips, supra, Hill v. Gettys,* 135 N. C. 373, 47 S. E. 449, *Stebbins v. Petty,* 209 Ill. 291, 70 N. E. 673, 101 Am. St. Rep. 243, and *Chicago, T. & M. C. Ry. Co. v. Titterington, supra.* These cases support the proposition of the note. In *Edgington v. Fitzmaurice,* 29 Ch. Div. 459, 483, occurs Lord Bowen's well-known dictum that:

" 'The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else.'

"There can be no good reason why this rule of law should not apply to the transaction under review. There was quite enough evidence, some of it found in subsequent declarations of the plaintiff, to justify the trial court in a finding in agreement with defendants' contention that plaintiff's deed was procured by fraud of the sort stated above. The trial court saw and heard the witnesses, and we are unable to say that the court may not properly have considered the evidence as clear and convincing to the conclusion of fraud.

Such being the case, the judgment of the court must be affirmed.''

In *Hill v. Gettys,* 135 N. C. 373, 47 S. E. 449, the court said:

''The general rule in regard to promises is that they are without the domain of the law unless they create a contract, breach of which gives to the injured party simply a right of action for damages, and not a right to treat the other party as guilty of a fraud. But that proceeds upon the ground that to fail to perform a promise is no indication that there was fraud in the transaction. There may, however, have been fraud in it, and this fraud may have consisted in making a promise with intent not to perform it. To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and of fraud as could be made. A promise is a solemn affirmation of intention as a present fact. 1 Bigelow on Fraud, 484. (The author is discussing of course civil remedies). 'When a promise is made with no intention of performing it, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense.' *Goodwin v. Horne,* 60 N. H. 485. 'The intent is always a question for the jury, and to determine whether the intent was fraudulent the jury have necessarily to look to the circumstances connected with the transaction or those immediately preceding or following it.' *Des Farges v. Pugh,* 93 N. C. 31, 53 Am. Rep. 446.''

In 26 C. J. 1093, this language is found:

''Since the state of a man's mind is as much a fact as the state of his digestion, the weight of authority holds that if the falsity of the statement can be established, the misrepresentation of opinion, belief, or intent is an actionable representation of fact. This redress may be had for the dishonest expression of an opinion contrary to that really entertained by the speaker, especially if he is an apparently disinterested third person, or if a deliberately false opinion is ex-

pressed in terms importing personal knowledge of its truth, or for a promise made with the present intent of future breach. Under this doctrine the speaker has been held liable for misrepresenting his opinion as to the amount of future stock dividends, the purposes for which he will use leased premises, and his intention to buy an option, indorse a third person's note, bid in goods at an auction, or contract a marriage. It has likewise been held fraudulent to misrepresent the present intent of a third person to do a future act. Since the mere failure to perform a covenant does not conclusively establish that it was originally made with the fraudulent intent of a subsequent breach, there can be no redress unless it affirmatively appears that at the time of making such promise the promisor acted with the purpose of deception and misrepresented his then existing intent to perform."

Support for the principle announced can be found in our own cases, although the precise question was not therein presented. In *Rozell v. Vansyckle,* 11 Wash. 79, 39 Pac. 270, the action was to secure the cancellation of certain deeds obtained by promises which the grantor had no intention of performing. Against the objection that the suit could not be maintained, we said:

"The parol promise upon the part of Vansyckle, and upon which the plaintiff relied, was made in bad faith and with intent to deceive, and hence amounted to an actual fraud. It was made by him without any intention of performing it; and the construction which the statute of frauds has almost universally received is that it excepts from its operation trusts which arise from fraud, either actual or constructive. This we conceive to be the principle upon which the rule laid down by Pomeroy, Story and the other writers on the subject, rests."

In *Hewett v. Dole,* 69 Wash. 163, 124 Pac. 374, we said:

"We have no doubt that the weight of authority sustains the appellant's contention that, if the promise is made merely as a means of deceiving and with no intention to perform, it constitutes such fraud as will support an action for deceit and entitle the injured party to a rescission. 20 Cyc. 22. *Brison v. Brison*, 75 Cal. 525, 17 Pac. 689, 7 Am. St. 189; *Cerny v. Paxton & Gallagher Co.*, 78 Neb. 134, 110 N. W. 882, 10 L. R. A. (N. S.) 640; *Atkins v. Atkins*, 195 Mass. 124, 80 N. E. 806, 11 L. R. A. (N. S.) 273."

See, also, *Mohney v. Ellis*, 69 Wash. 643, 125 Pac. 1031.

But the appellant says that the remedy of the plaintiffs for the transactions recited, conceding that they have a remedy, is one which can be enforced only by the equity powers of the court; that it is not such a transaction as will furnish a basis for an action at law. But we cannot think the contention tenable. Doubtless the plaintiffs had a choice of remedies. There is no doubt, we think, that the plaintiffs could have sued in equity for the specific relief promised them, and could have had in that suit, if intervening rights cut off the specific remedy, a money judgment in an amount sufficient to compensate them for the loss of the specific remedy. But we are equally clear that the plaintiffs had a remedy at law. If the appellant made false statements and promises which he did not intend to keep, and thereby lulled the plaintiffs into the forbearance of a legal right to their injury, it was a fraud for which an action at law will lie.

"Election between different remedial rights arising out of the same facts may be made, although one of these rights is legal in its nature, and the other equitable." 20 C. J. 5.

In *Hogan v. Kyle*, 7 Wash. 595, 35 Pac. 399, 38 Am. St. 910, we held it to be the prevailing doctrine, that, on a breach of contract to convey land, the injured

party had a choice of remedies—he could either sue in law for damages, or resort to equity to enforce a specific performance. To the same effect is *Anderson v. Wallace Lumber & Mfg. Co.,* 30 Wash. 147, 70 Pac. 247.

There are many transactions, of course, injurious to one of the parties thereto, for which the law does not afford a remedy, but which are cognizable in equity. There are others again cognizable in both jurisdictions. The case before us is of the latter sort. For the damages arising because of the fraud and deceit, the law affords a remedy, while if specific performance was desired, the equity powers of the court only could grant it.

It is next contended that a promissory statement cannot be the basis of an action for deceit, and that here the statements are of this sort. But the doctrine is true only to a limited extent. A fraudulent promise which induced a person to act in such a way as to affect his legal right, or to alter his position to his injury, is actionable. *Pocatello Security Trust Co. v. Henry,* 35 Idaho 321, 206 Pac. 175.

It is next urged that the evidence is insufficient to sustain the verdict. We have carefully examined the testimony, and, while its perusal has convinced us that the jury could well have found for the other side, we find substantial evidence on all of the issues necessary to support the plaintiffs' case. This ends the inquiry in this court. While the trial court may, in the exercise of its discretion and in the furtherance of justice, set aside a verdict if it deems it contrary to the weight of the evidence, this court cannot do so. Our powers are limited to the inquiry whether there is substantial evidence in support of the verdict. Nor do we find anything in the record which indicates that the verdict was the result of passion or prejudice on the part of

the jury. It was for a larger amount than the trial court permitted it to stand, and in our opinion should be still further reduced, but there was evidence of values which would permit even a larger verdict than the jury returned.

The errors thought to require a new trial relate to the instructions which the appellant requested the court to give and which were refused in the form suggested. The first of these is a request for an instruction to the effect that no confidential relations existed between the appellant and Mrs. Kritzer. While the instruction might have been given as a cautionary instruction, we find nothing in the record that demanded it. It was nowhere claimed, either in the pleadings or the evidence, that such a relation existed. The trial court, moreover, in the instructions given, defined the issues and stated the facts necessary to be found in order to find for the plaintiffs with such unusual clearness as to leave nothing to be desired in that respect. We are clearly of the opinion, therefore, that their verdict was not the result of the want of an instruction in the nature of the one requested.

The further requested instruction was the following:

"If you believe that a receipt for rent was given by the defendant Moffat to the plaintiff Marie Kritzer and accepted by said plaintiff Marie Kritzer, then and in that event I instruct you that the relationship of landlord and tenant was created between those parties, and I instruct you that you must find for the defendant."

On the issue whether the relation of landlord and tenant existed between the appellant and Mrs. Kritzer, doubtless a receipt such as is mentioned in the instruction would be competent evidence to support the issue; but, manifestly, the giving and acceptance of such a receipt would not create the tenancy, nor would

it be conclusive evidence that such a tenancy existed. The instruction as requested involved both of these principles, and in consequence was properly refused as an incorrect statement of the law.

The final contention is that the recovery is too large. With this we are constrained to agree. While the evidence justifies a finding that the plaintiffs suffered a substantial damage, it does not, in our opinion, justify a recovery in the sum allowed by the trial court. The measure of damages, as the court charged the jury, is the difference between the market value of the land on May 3, 1920, the time the right of redemption expired, and the sum the plaintiffs would have been required to pay to effect a redemption. This sum, as we view the evidence, cannot exceed the sum of six thousand dollars. The cause will, therefore, be remanded to the trial court, with instructions to allow the plaintiffs twenty days in which to remit from the judgment all in excess of the sum named. If they fail or refuse so to do, a new trial will be granted.

TOLMAN, C. J., HOLCOMB, and MITCHELL, JJ., concur.

MACKINTOSH, J., (dissenting)—I can hardly agree that a mere fraudulent promise inducing action is actionable.