## PAPANIKOLAS et al. v. SAMPSON et al.

No. 4660.   Decided January 3, 1929.   (274 P. 856.)

*Carlson & Carlson,* of Salt Lake City, for appellants.

*F. W. James, J. D. Rice,* and *Dey, Hoppaugh, Mark & Johnson,* all of Salt Lake City, for respondents.

THURMAN, C. J.

This is an action to recover damages occasioned by alleged promises and representation made by the defendants. The complaint, in substance, alleges that on or about November 10, 1922, and for some time thereafter, plaintiffs were the owners of three parcels of real property located near Magna, in Salt Lake county, Utah. Each parcel is especially described in the complaint, but for convenience here we will designate them as tracts A, B, and C. It is alleged that tract B was the home and residence of plaintiffs. It is then alleged that in December, 1918, plaintiffs executed a mortgage to defendant Sampson on tract A to secure the payment of a promissory note in the sum of $11,500, due January 1, 1922; that on tract B plaintiff executed a mortgage to Harry Bews, of date March 12, 1919, to secure payment of a promissory note in the sum of $2,000, due March 12, 1920; that on tract C they executed a mortgage to A. Richter & Co. October 14, 1919, to secure a promissory note, due October 4, 1922, for $6,000. The

complaint then alleges that on or about November 10, 1922, when said promissory notes had become due and payable, the defendants and each of them represented to and promised plaintiffs that defendants would purchase an assignment of the mortgage given on tract B to secure the note for $2,000, and would also purchase an assignment of the mortgage given on tract C, together with said promissory notes for which said mortgages were given, and that by said purchases the said defendant Louis Sampson would be then the owner and holder of all of said mortgages and promissory notes, and that the total amount due under all of them on said last-named date was $20,184; that defendants would institute proceedings against plaintiffs and all their judgment creditors to foreclose said mortgages, provided plaintiffs as defendants in said foreclosure proceedings would forbear answering or in any way defending said proceedings, and providing further that plaintiffs would pay defendant H. L. Mulliner the sum of $175 as an attorney's fee in said foreclosure proceedings; that defendants would then obtain judgment against plaintiffs herein by default and would purchase all of said mortgaged property at sheriff's sale and that when and after defendants had so purchased said property defendants would immediately sell all of said property back to plaintiffs for the sum of $20,184 and all taxes that had been paid thereon by defendant Sampson; that all of said property would be sold to plaintiffs for said sum on the following terms: The said purchase price to be paid in full within seven years from date of sale in monthly installments of $250 each, with interest on unpaid balances at 7 per cent. per annum, provided that plaintiffs herein would assign to defendants all the rentals that would become due on tracts A and C and that all such rentals, when collected, should be applied and credited on the said purchase price and the installments to be paid as aforesaid, said assignment of rentals to be effective only until the full purchase price to be paid by plaintiffs was fully paid.

Plaintiffs then allege that, in reliance upon said representations and promises of said defendants, and believing that said representations and promises were made in good faith by defendants and would be kept and performed by them, plaintiffs paid the said sum of $175 to the defendant Mulliner and on or about December 1, 1922, assigned to defendant Sampson all of said rentals that had accrued or might accrue on said tracts A and C; that in February, 1922, defendant Sampson filed and prosecuted three suits in the district court of Salt Lake county to foreclose said mortgages, and plaintiffs herein, relying upon the representations and promises made by defendants as aforesaid, refrained from answering or otherwise pleading in said suits, and said defendant Sampson obtained judgment thereon by default; that defendant Sampson bought all of said tracts or parcels of real estate at sheriff's sale made under said foreclosure proceedings; that said sale and purchase was made on May 14, 1923, and certificate of said sale was issued by the sheriff to said defendant; that immediately thereafter plaintiffs requested and demanded that a sale of said property be made to them pursuant to the representations and promises made by defendants herein as hereinbefore alleged; that thereupon defendants herein represented to plaintiffs that said sale to plaintiffs herein could not be properly made until the redemption period of six months had expired, as other judgment creditors might redeem and that at the expiration of said period defendants herein would sell said real estate and deliver to plaintiffs herein an agreement of sale upon the terms and conditions by defendants represented and promised as aforesaid; that, after said redemption period had expired and after defendant Sampson had received the sheriff's deed for said property, defendants herein refused and have continued to and do now refuse to sell said real estate to plaintiffs, or to execute and deliver an agreement of sale therefor as represented and promised by them on or about November 10, 1922, and at all other times, notwithstanding plaintiffs,

on several occasions, have demanded that said defendants make such sale or enter into an agreement therefor pursuant to their aforesaid promises and representations; that plaintiffs in good faith and in reliance upon said representations and promises by defendants, and having been lulled into a sense of security thereby, paid to defendant Mulliner $175 as an attorney's fee and assigned said rentals on tracts A and C and refrained from answering or otherwise pleading in said foreclosure proceedings and permitted judgment in said actions to be obtained by default and permitted defendant Sampson to purchase all of said property at sheriff's sale.

Plaintiffs further allege that, had it not been for said representations and promises of defendants, plaintiffs would have answered in said suits for foreclosure and would have protected their interests therein and would have been able, and were in fact able, at all times after said suits were filed, to pay defendants the whole amount lawfully due them under the terms of said notes and mortgages, but that plaintiffs refrained from making payment of such amount because of the representations and promises that had been made by said defendants; that the promises and representations made by defendants on or about November 10, 1922, and at other times as herein alleged, were and each of them was fraudulent and were made by defendants with the fraudulent intent to mislead plaintiffs and enable defendants to acquire title to said real estate. Plaintiffs then allege, in substance, that defendants fraudulently conspired together to obtain title to said property in the manner and form hereinbefore alleged.

It is also alleged in the complaint that the three parcels of land, A, B, and C, at the time of the sheriff's sale on May 14, 1923, were, and ever since have been, of the reasonable market value of $56,000, or of a reasonable and market value of $35,800 in excess of the amount lawfully due under the terms of said notes and mortgages and $35,800 in excess of the sum for which defendants represented as

aforesaid that they would sell such property to the plaintiffs after obtaining title thereto by virtue of said foreclosure proceedings.

It is further alleged that plaintiffs were at all times able and willing to pay the said sum of $20,184, together with accrued interest and taxes upon the said installment plan and upon the terms and conditions promised and represented by defendants; that immediately after the six months' redemption period expired plaintiffs offered to pay in full the said $20,184 and accrued interest and taxes that may have been paid by defendant Sampson for a deed of conveyance of said parcels of land, but defendants refused to accept said sum for said property and refused to perform as they had promised and represented, and have fraudulently retained, and do now fraudulently retain, said property; that defendants have received under the assignment of rentals the sum of $3,400 that should apply on the purchase price of said property under the terms promised and represented by defendants as hereinbefore stated.

Finally, plaintiffs allege their damages to be as follows: $3,400 on account of rentals collected and received by defendants; $175 as an attorney's fee paid to defendant Mulliner; $35,800 on account of the reasonable value of said property in excess of the amount defendants represented and promised plaintiffs might purchase said property for as hereinbefore alleged. Plaintiffs pray judgment for said amounts and costs.

We have stated the allegations of plaintiffs' complaint with considerable detail, for the reason that in our opinion the solution of the questions presented depends largely upon determining the precise nature of the action.

The defendants filed separate answers to the complaint. The answers are identical except as to the allegations that plaintiffs agreed to pay, and did pay, to defendant Mulliner $175 as an attorney's fee in the foreclosure cases. As to that, Mulliner specifically denies that such sum was agreed to be paid or was paid. Both answers deny specifically the

alleged agreement of November 10, 1922, as alleged in plaintiffs' complaint or any agreement whatever. The foreclosure of the mortgages is admitted, as is also the judgments by default, the sale of the property by the sheriff to Sampson, the certificate therefor, and the sheriff's deed to Sampson at the expiration of the period of redemption. Every allegation of the complaint tending to show liability on the part of defendants, together with many affirmative allegations alleging a complete defense on merits, is set forth by the defendants, together with a plea that the action is barred by the statute of frauds, to wit, sections 4874, 5811, 5813, Comp. Laws Utah 1917.

The answers are voluminous, and, in view of the controlling questions, as we view the case, we have deemed it unnecessary to do more than state their general effect as above set forth. Any other allegation of the answers that may be material will be referred to in the course of the opinion.

The case was tried to the court and the jury. At the close of the evidence the court, on motion, directed a verdict for the defendants. The verdict was rendered, judgment entered, and plaintiffs appeal.

All of the assignments of error are based, primarily, on the order of the court directing a verdict. The motion for a directed verdict, in substance, was that the evidence was insufficient to show fraud or any intention to defraud the plaintiffs; that the judgments in the foreclosure suits were just and that there is no evidence showing a defense thereto; that if any representations were made, as claimed by the plaintiffs, the evidence shows that plaintiffs failed to comply with their part of the alleged arrangements, either by paying the installments, the taxes, or the insurance; that the evidence shows the alleged representations relied upon consisted of alleged oral promises to convey real estate in the future; that any such promise is void under the statute of frauds and that relief can only be had in a court of equity to avoid the judgment, if fraudulent,

and such representations could not be made the basis for damages in an action at law; that the alleged promises are not misrepresentations of any existing fact or past fact, but merely alleged promises looking to the future that cannot be the basis for an action at law for fraud or deceit; that the evidence conclusively shows that the defendant Mulliner could not have defrauded the plaintiffs by failure to give them a contract to convey the real estate, for he had no interest therein, and, finally, that the complaint does not state facts sufficient to constitute a cause of action.

The trial court sustained the motion principally upon the ground that by bringing the action plaintiffs affirmed and ratified the oral contract which was unenforceable. The court also was of opinion that the case involved a series of accounts covering a period of years and was not a proper case for a jury.

The principal question discussed in the briefs is upon the issue presented by defendants' plea of the statute of frauds. It is unnecessary, at this stage of the opinion to enter into a detailed statement of the plaintiffs' evidence. It is sufficient to say that, as far as concerns the alleged promises and representations made by the defendants, plaintiffs' evidence tended to show that such promises and representations were made by the defendants substantially as alleged in the complaint except in certain particulars that will be referred to hereinafter if deemed material. The controlling question in our opinion is, Is this an action at law to recover damages for fraud and deceit as contended by appellants, or is it an action for breach of contract for the sale of land as contended by respondents? If the former, the statute of frauds does not apply. If the latter, the statute applies and the action cannot be maintained. The sections of the statute pleaded by defendants (sections 4874, 5811, and 5813, Comp. Laws Utah 1917) provide in substance that contracts for the sale of land are void unless in writing. What is the gravamen of plaintiffs' cause of action? What is the relief sought

and what are the grounds for such relief? These are pertinent questions here. We have stated the allegations of the complaint almost verbatim. As far as the testimony of plaintiffs is concerned it tends to support the substance of these allegations. It will not be contended that the allegations of the complaint do not constitute an oral contract for the sale of land. Defendant Sampson was the owner of one of the mortgages. He had the undoubted legal right to purchase assignments of the other two without an agreement with the plaintiffs. The mortgages were all due. Defendants also had the undoubted legal right to foreclose these mortgages and recover judgment thereon for the full amount of the indebtedness, together with interest and such costs and expenses as are incident to foreclosure cases. But it is alleged that defendants by their promises and representations induced plaintiffs to refrain from answering or otherwise pleading to the actions. Plaintiffs do not allege that they had any defense to the action and no defense was proven, so the plaintiffs gave up noth to which they were entitled. They also alleged that defendants promised to sell them the property for $20,184 on installment payments of $250 per month, with interest on deferred balances covering a period of seven years. The aggregate amount of the foreclosure judgments was the sum of $23,871.91. The right of plaintiffs to purchase the property for a sum less than the amount of the foreclosure judgments could only be maintained by virtue of some contract between the parties. Hence there seems to be no avoiding the conclusions that the right here sought to be enforced is one claimed by virtue of the contract pleaded in plaintiffs' complaint. An assignment of certain rents to Sampson was also a condition of the contract as alleged, but not proven as alleged. It appears they had no connection whatever with the alleged agreement of November 10, 1922. The subsequent alleged agreements after the foreclosure and after the sherriff's deed was issued to Sampson as alleged in the complaint and the alleged failure to comply therewith

appear to have no substantial foundation as grounds for relief, especially as it appears that defendant Sampson offered to sell the property to plaintiffs for $25,000, which was substantially less than the indebtedness due Sampson including taxes he had paid on the property for a series of years.

It is undisputed that the contract alleged in the complaint was an oral contract for the sale of real estate, and while it is contended by plaintiffs that they are not suing for damages for a breach of the contract, but for damages for fraud and deceit, they, nevertheless, pray for a sum equal in amount to the difference in the actual value of the property as alleged by them and the amount they were to pay for it under the alleged promises and representations made by defendants. The amount of damages claimed exactly coinciding with the measure of damages for a breach of contract, together with the other elements above mentioned, are persuasive in a high degree that this is an action for a breach of contract and not an action for fraud and deceit. It is true that plaintiffs allege that the promises and representations made by defendants were fraudulent and made with intent to deceive and mislead plaintiffs and lull them into a sense of security in order that defendants might obtain title to the property in question and deprive plaintiffs thereof; but such allegations are not even evidence, much less proof of the fact. Whether the gravamen of plaintiffs' cause of action is damages for breach of contract or damages for fraud must be determined by the law applicable to the facts of the case.

Counsel for plaintiffs call our attention to numerous authorities in support of their contention that this is an action at law for deceit and not an action for a breach of contract. They quote the following from 27 C. J. 168, as a statement of the rule upon which they rely:

"The fact that false representations are made in connection with a contract which the general statute of frauds requires to be in writing does not render it necessary that such representations shall be

in writing in order that they may sustain an action of deceit, or be relied upon as ground for rescinding the contract."

See, also, 14 Am. & Eng. Ency. L. p. 32, to the same effect. In addition to these authorities, counsel cite the following cases, some of which are found in the footnote to the text above quoted: *Foss* v. *Newberry,* 20 Or. 257, 25 P. 669; *Nanos* v. *Harrison,* 97 Conn. 529, 117 A. 803; *Corder* v. *O'Niell,* 176 Mo. 401, 75 S. W. 764; *Galley* v. *Galley,* 14 Neb. 174, 15 N. W. 318; *Storseth* v. *Folsom,* 45 Wash. 374, 88 P. 632; *Haddaway* v. *Smith* (Tex. Civ. App.) 256 S. W. 965; *Ryan* v. *Shoenberger,* 224 Ill. App. 308; *Charvat* v. *Gildemeister,* 222 Mich. 286, 192 N. W. 674; *Kritzer* v. *Moffat,* 136 Wash. 410, 240 P. 355, 44 A. L. R. 681.

It is impracticable to review all of the above cases without extending our opinion to an unreasonable length.

In *Foss* v. *Newberry,* supra, plaintiff brought an action to foreclose a mortgage. Defendant answered admitting the mortgage, but alleged the mortgage was given to secure part of the purchase price of the mortgaged property; that the land was valuable only for the timber growing thereon; and that as an inducement to defendant to purchase the land plaintiff represented that he had two rights of way across a neighboring tract of land over which timber could be hauled to market. The deed to defendant did not mention the rights of way. Defendant prayed for damages on the ground of the fraudulent representation. The statute of frauds was relied on by plaintiff; but as the plaintiff knew he had no right of way across the neighboring land when the false representation was made the court held that the statute of frauds had no application.

In *Nanos* v. *Harrison,* supra, the third paragraph of the syllabus states with sufficient clearness the question involved and the rule announced by the court:

"A case of constructive fraud is presented, where in connection with an oral lease for years to plaintiff by defendant, owner of the premises, defendant, bound to know whether he could lease, made the representation, false by reason of an existing lease, that he could

lease and give immediate possession, on which he. intended plaintiff to rely, and on which and defendant's direction so to do plaintiff did rely, and enter into a contract for fixtures to his damage."

Again it was held the case was not within the statute of frauds. The reasons given. therefor are substantially the same as in the Foss Case just reviewed.

In *Galley* v. *Galley*, supra, the second paragraph of the syllabus reads:

"The statute of frauds; relative to the sale of land, will not enable one who has accepted a conveyance of real estate to escape paying for it, simply because the contract of purchase was not in writing."

In *Haddaway* v. *Smith*, supra, we quote the second headnote, which suggests the question involved and the holding of the court:

"Where land sale contract provided for further payments in T. county before closing of sale, and vendor with intent to deceive, and without intending to do so, stated that he would come to L. county and receive such payments and there deliver deed to purchasers, and by reason of relying on such promise the further payments were not made as stipulated, the vendor forfeiting the contract, such fraud directly affected both purchasers and brokers, and brokers could sue either for breach of contract or for fraud and deceit."

No comment is necessary concerning the foregoing cases. It is manifest that fraud and deceit constitute the gravamen of the actions, notwithstanding a breach of contract was incidentally involved.

*Kritzer* v. *Moffat*, supra, is perhaps the nearest in point of any of the cases cited in suport of appellants' contention. In that case the second and ninth headnotes fairly reflect the questions involved and the decision of the court thereon:

"Where defendant made false statements and promises which he did not intend to keep, and thereby lulled plaintiffs into forbearing from exercising their legal right of redemption in property, it was a fraud, and plaintiffs had choice of action at law for fraud or of action in equity for specific relief promised."

"The measure of damages for fraudulently procuring plaintiffs not to exercise their equity of redemption held to be the difference between the market value of the land at the time the right of redemption expired and the sum the plaintiffs would have been required to pay to effect a redemption."

The opinion in that case and the authorities copiously quoted from are illuminating upon the question that promises as to the future may constitute fraud when made with the intention of not performing them. The case is annotated in 44 A. L. R., and at page 693 the annotator says:

"The reported case (*Kritzer* v. *Moffat* [136 Wash. 410, 240 P. 355] ante, 681) seems to be the only decision allowing a remedy at law for fraud preventing a timely redemption from a judicial sale."

While it appears that in cases of the class to which the Kritzer Case belongs the usual practice is to proceed in equity instead of at law, still we are of opinion that in that case the fraud practiced was clearly the gravamen of the plaintiff's cause of action and the injury resulting therefrom was so manifest the court might well hold as it did and sustain the action at law for deceit.

In *Charvat* v. *Gildemeister,* supra, the defendant induced plaintiff to invest in leases which he represented were owned by him on certain hotels. In an action for fraud evidence of the lessee of the hotels that defendant had no lease on the hotels was held by the court to be admissible over objections that the leases were the best evidence. That was a case of the most glaring fraud. It has no application to the instant case.

In *Storseth* v. *Folsom,* supra, respondent falsely represented that he was the owner of certain land and for a valuable consideration granted by parol the right to appellant to construct and use a wagon road across the land and after the construction thereof the use of it was forbidden. The respondent was estopped to urge as a defense to an action for damages that the contract would have been unenforceable if he had been the owner. That case is anala-

gous in some respects to *Foss* v. *Newberry,* supra, but, in addition to the elements involved in that case, permission in the case under review was given to construct the road and it was constructed. There was clearly part performance which took the case out of the statute of frauds.

It is unnecessary to review the case or two remaining. They shed no new or different light on the question under review. All of the cases cited by appellants here were cases in which the party complaining was clearly injured by the fraud and deceit of the party complained of. They were cases in which the party complaining was defrauded of an unquestionable legal right by fraud and deceit. All of them were cases in which the fraudulent intent existed at the time the false representations were made. In these respects there is a clear distinction between those cases and the case at bar. The fact that Sampson, after he procured the sheriff's deed for the land, offered to sell it to the plaintiffs for less than the plaintiffs owed him on the foreclosure judgments, together with the taxes that had been paid by Sampson, is quite conclusive of the fact that Sampson had no intention, when the alleged promises and representations were made, to defraud plaintiffs of any rights they had respecting the property. Unless a fraudulent intention existed when the alleged promises and representations were made, they would not constitute fraud for which an action at law for deceit could be maintained.

Assuming, as we do, that the complaint alleges a contract for the sale of land and a breach thereof and damages for such breach, it must be conceded that the statute of frauds pleaded by defendant is a bar to such action. We shall therefor not consider at great length the authorities relied on by respondents.

As to the finality of foreclosure judgments concerning the amount due on the judgments, respondents refer to 3 Jones on Mortgages (7th Ed.) § 1587; 2 Freeman on Judgments (5th Ed.) pp. 1854, 1855, §§ 878, 879; 2 Black on Judgments (2d Ed.) pp. 766-769, 772, 1009. As to the

effect of the statute of frauds, respondents quote the following passage from 27 C. J., commencing on page 314:

"The statute of frauds operates as a bar to all actions brought upon oral contracts falling within its terms, and accordingly an action to recover damages for a breach cannot be maintained by either party against the other, unless the benefit of the statute as a defense is waived or lost by failure to plead it or otherwise. But the operation of the statute is not confined to cases where an action is brought directly upon the contract. Whatever the form of the action may be, if the proof of a promise or contract within the statute is essential to maintain it, there can be no recovery unless the statute is satisfied. Even an action sounding in tort may be barred by the statute where an essential element of the cause of action is an oral contract within the statute. But where the oral contract or representation is a mere circumstance or incident of a fraud, it may be shown in an action in tort for damages as the statute has no application to such a case."

As to what constitutes actionable fraud, respondents quote the following from 12 R. C. L. pp. 254, 255:

"Since a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time, or to make good subsequent conditions which have been assured. Nor, it is held, is such nonperformance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when made. The failure to make it good is merely a breach of contract, which must be enforced by an action on the contract, if at all."

See, also, same volume (pages 237, 238), where the author says:

"There can be no fraud where there is nothing wrong, and fraud cannot be deduced or inferred from that which the law pronounces honest. Nor can it be predicated upon acts which the party charged has a right by law to do, provided he pursues such right by lawful means, nor upon the nonperformance of acts which by law he is not

bound to do, whatever may be his motive, design, or purpose, either in doing or not doing the acts complained of. * * *. Nor, as a general rule, can fraud be predicated upon the failure to perform a promise or contract which is unenforceable under the statute of frauds, since in such case the promisor has not, in a legal sense, made a contract, and hence has the right, both in law and in equity, to refuse to perform."

On the question of the rights of parties under oral agreement to buy land or bid it in at judicial sale counsel call attention to an annotation commencing on page 10, 42 A. L. R. The annotation is exhaustive and illuminating on many phases of the instant case.

It is contended by counsel for respondents that the cases cited in the note clearly show that, if plaintiffs here have any right at all, their remedy is in equity and not at law. In this connection it is also contended that in no case, even in equity, can a complaining party set up a promise void under the statute of frauds and base recovery upon rights or damages alleged to have been created by such promises which he would not have except for such agreement. Such contentions appear to be well suported by the authorities cited in the note.

As before stated in this opinion, the real basis of plaintiffs' cause of action appears to be the alleged promises and representations of defendants to sell and convey to plaintiffs the real estate in question. Upon this point we cite as further authorities *Kiser* v. *Richardson*, 91 Kan. 812, 139 P. 373, reported in Ann. Cas. 1915D, 539, and note, 540; *Kelly* v. *Ellis*, 39 Mont. 597, 104 P. 873.

It is alleged, in substance, in the complaint that the alleged promises and representations made by defendants were made with a fraudulent intent and that they did not intend to carry them out. Upon this point we quote the following from the opinion in *Steiner* v. *American Alcohol Co.*, 183 App. Div. 885, 169 N. Y. S. 1115:

"If we assume, for the argument, that some damages is stated, nevertheless we are of opinion that the facts alleged are not sufficient

to create any liability on the part of the defendant. The oral contract was void by the statute of frauds and unenforceable. The plaintiffs seek to escape the force of this objection by alleging that the defendant represented that it was not necessary to put the contract in writing because the oral contract would be in fact performed, and that this representation was fraudulent because there. was no intent at that time to perform the oral contract. But no right has been surrendered by reason of this alleged fraud. The plaintiffs had no right to compel that contract to be put in writing and, while contracts are often canceled for fraud, this is the first suggestion that has come to my notice from the bench or bar that a contract can be made by fraud. It would be an easy way to completely nullify the statute of frauds by claiming that an oral contract, made void because not in writing, was made good by the fraudulent intent of the maker. A statement of the proposition would seem to be all that is necessary for its refutation."

It follows from the foregoing discussion that the court is of opinion that this is an action for a breach of contract for the sale of real estate, and, the contract being verbal, it is barred by the statute of frauds.

We have not considered the evidence in detail, but, as stated near the beginning of the opinion, the testimony of plaintiffs tended to show that the alleged promises and representations were made by the defendants, except in certain particulars which would be referred to later in the opinion if deemed material. For that reason our discussion of the case thus far has been mainly upon the allegations of the complaint rather than upon the evidence given at the trial.

While we do not deem it material as affecting the result of our deliberations, it will nevertheless tend to explain some features of the case which ought to be explained in justice to one of the defendants if we refer briefly to one feature in particular. It is alleged in the complaint that one of the conditions imposed by the defendants was that the defendant Mulliner was to be paid $175 as attorney's fee in the foreclosure cases and that said sum was paid by them. Mulliner in his answer denied

there was any such agreement, or that such amount, or any amount whatever, was paid to him as attorney's fees by plaintiffs. He produced canceled checks at the trial and other evidence tending strongly to show that he had not been paid by plaintiffs any amount as attorney's fees at all. Among such evidence were the judgments in the foreclosure actions. These judgments are final upon all questions adjudicated, among which was the question of attorney's fees in the actions. The judgments have not been attacked, except as it is alleged in the complaint that the judgments were excessive. That allegation, on motion of defendants, was stricken and the ruling of the court was not error. It may be said in this connection, as well as later on, there appears to be no reason whatever to justify plaintiffs in making Mulliner a party defendant to this action. He had no power to make or join in a conveyance thereof and there is not a scintilla of evidence, as we read the record, to justify the assumption that Mulliner acted otherwise than as attorney for Sampson, and in that relation, as far as we can determine, his conduct appears to have been irreproachable.

There is another matter not disputed in the record that tends to reflect some light upon matters leading up to the alleged promises and representations. Not only were the three mortgages past due when it is alleged the promises and representations were made, but there were four judgment liens and one attachment lien in favor of other parties on the property in question amounting in the aggregate to more than $4,000. These were subsequent to defendants' mortgages and it appears that plaintiffs were willing that judgments be taken by defendant Sampson in order to foreclose the said judgments and liens of other creditors, except a judgment in the federal court. That judgment was released by procurement of respondents. The judgment of foreclosure did not cover delinquent taxes, but plaintiff Papanikolas testified he agreed to pay taxes and insurance.

There is no direct allegation that plaintiffs were prevented by fraud from exercising their right of redemption, which, of course, was a legal right. But assuming that the allegations of the complaint are sufficiently broad to charge fraud in respect to the right of redemption, it nevertheless appears that respondents offered to accept for the property the sum of $25,000, which was less than the amount of the foreclosure judgments with interest thereon at the time the offer was made. Reasonable time was also given in which to make such payment. The payment was not made and plaintiffs were notified to surrender possession. Defendant Sampson also tendered the same offer in his answer herein. As before suggested, the offer to take less for the property than the judgment indebtedness amounted to is almost conclusive evidence that at no time was there a fraudulent intent on the part of defendants to deprive plaintiffs of any right they had in the property, whether the right of redemption or otherwise. It is true Papanikolas testified that Sampson, on the occasion when Sampson refused to give plaintffs a written contract, said, "Every business has got some tricks," and, "I am boss now." This was about a year after the alleged promises and representations in November, 1922. In the meantime more or less hard feelings had become engendered on account of unsatisfactory business relations respecting the property. It would tax credulity to the utmost to conceive that such language on the part of Sampson a year later would be any evidence of a fraudulent intent existing in the mind of defendants in November, 1922, or at any other time, in view of the record before us.

We appreciate the fact that we are here dealing with a directed verdict, and in such case, if there was any substantial evidence upon which the jury could find for the plaintiffs under the pleadings, the court erred in directing the verdict. In our opinion there was no such evidence.

In conclusion the fact may be mentioned that after the

sheriff's deed was delivered to Sampson it appears he expended several thousand dollars in improvements upon the property to put it in a rentable condition. He also paid delinquent taxes that had accumulated for several years. If plaintiffs had brought an action in equity to redeem, plaintiffs would at least have been required to reimburse Sampson for the taxes he had paid, and, if plaintiffs had succeeded in redeeming the property, it would still, while in their name, be subject to execution by the other judgment creditors whose rights had been foreclosed as against Sampson in the foreclosure proceedings. Plaintiffs apparently sought to avoid the consequences of that situation by bringing their action at law and thereby stand to recover such damages as they never could have recovered in this case in a court of equity.

For the reasons stated, the judgment is affirmed, at appellants' cost.

CHERRY, HANSEN, and GIDEON, JJ., concur.

STRAUP, J., being disqualified, did not participate herein.