GERMAN NATIONAL BANK OF RIPON, Appellant, vs. PRINCETON STATE BANK, Respondent.

*March 21—April 17, 1906.*

*Sales: Setting aside for fraud: Intention not to pay: Evidence: Question of law or of fact? Bills and notes: Action, tort or contract?*

1. A sale of property cannot be set aside as fraudulent because of the mere fact that the buyer, not being asked, did not disclose his insolvency. There must also have been an intention on his part not to pay.

2. The situation and circumstances of the buyer may be shown and may justify an inference that he could have had no reasonable hope of ever being able to pay, but had, rather, a definite purpose not to pay; but this inference is one of fact, not of law, and a finding of the trial court thereon will not be disturbed unless clearly against the preponderance of the evidence.

3. One who had applied to a bank for a loan, upon being informed that there were no available funds, suggested an exchange of paper and received from the bank the note of a third person, giving in return his own note for a like amount. *Held*, that this was in effect a purchase of the third person's note and a giving of his own note for the price, and was not a sale of his own note to the bank so as to be within the reason of the rule that when one selling a promissory note conceals the fact of the maker's insolvency the sale may be avoided.

4. The complaint in an action by one bank against another alleged that one L. had procured a note from plaintiff by fraud; that defendant had acquired the note without consideration and with knowledge of the fraud, and had collected it and converted the proceeds to its own use; and that because of the "fraud and conversion" plaintiff had suffered damage in the amount of the note with interest. There having been no original contract relation between the parties, the action is *held* to be one in tort.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This is an action to recover damages for the conversion of a promissory note of the face value of $2,500. Trial by jury was waived and the action tried by the court, which made findings substantially as follows: That the plaintiff was and still is a national banking corporation doing business at Ripon, and the defendant a state banking corporation doing business at Princeton, during the times covered by the transactions in question, and that Charles Cowan and James L. Stone were at said times, respectively, president and cashier of the plaintiff bank, and one J. E. Leimer was cashier, director, and owner of a majority of the stock in the defendant bank; that on or about October 10, 1903, it was discovered by the commissioner of banking of the state of Wisconsin that

Leimer was short in his accounts, and that the *Princeton Bank* was carrying forged paper, and that on the 24th day of the same month the defendant bank was put into the hands of .a receiver, and that on or about December 11th following the receiver was discharged and the defendant bank resumed its business; that on or about September 26, 1903, the said Leimer, personally and not as representing the defendant bank, .applied to the plaintiff bank for a loan of $2,500 for his own use, and plaintiff bank being short of loanable funds made an ·exchange of paper with Leimer, sending to him the note of $2,500 against the Rush Lake Creamery Company in ex- .change for a note of Leimer of the same amount, payable on demand; that this arrangement was made by telephone between Leimer and Stone, in the usual course of business, without fraud or deceit on Leimer's part upon which the .plaintiff relied; that in procuring such loan Leimer made no false or fraudulent representations, nor did he state to the plaintiff bank anything relating to any past or present fact that was material or that was relied upon by the plaintiff; that the loan was procured by Leimer, who was then in good repute and held in high esteem by all the bankers, and the plaintiff took his unsecured note without asking questions, relying upon his personal standing and reputation; that at the time of said transfer, and for some time prior, Leimer was insolvent, having lost large amounts of money in speculation, but that he did not at that time have any intention not to pay, therefor; that immediately after said transfer Leimer dis- ·counted the Rush Lake Creamery note at the *Princeton State Bank,* for value, and the same was afterwards collected by the receiver of the bank during his receivership.

The court concluded from these facts that the plaintiff was not entitled to recover, and dismissed the complaint.

The exact facts as to the transfer of the note to Leimer appear undisputedly by the testimony of Mr. Stone, the cashier .of the plaintiff bank, as follows: On September 26, 1903,

Mr. Leimer, at Princeton, called up the *German National Bank,* at Ripon, by telephone.   Mr. Stone answered the call, and Mr. Leimer said they were about to increase the stock of the Montello State Bank, and he wished to make a loan (Mr. Leimer was a stockholder in the Montello State Bank).   Mr. Stone replied that the plaintiff bank was closely loaned up and unable to make any outside loans.   In reply to this, Mr. Leimer suggested an exchange of paper.   Mr. Stone then consulted Mr. Cowan, told him the conversation that he had with Leimer, and Mr. Cowan said that he thought an exchange could be made, and Mr. Stone stated that to Leimer over the telephone.   As a result of the conversation the plaintiff bank sent on the $2,500 note of the Rush Lake Creamery Company to Mr. Leimer, and received in return Leimer's own note for $2,500, payable on demand.   It appeared, also, that the Montello bank was not, in fact, about to increase its capital stock, but that the stock was only partly paid in, and that it had been determined to require payment in full.   It further appeared that Leimer had lost large sums of money in grain speculation, and was indebted to his own bank in nearly or quite the sum of $40,000, and had forged notes to the bank to cover up his overdraft.

Plaintiff appeals from a judgment dismissing the complaint.

For the appellant there was a brief signed by *Carter & Pedrick,* attorneys, and a reply brief signed by *Olin & Butler,* of counsel, and oral argument by *J. M. Olin* and *S. M. Pedrick.*

For the respondent there was a brief by *Thompson, Thompson & Pinkerton,* and oral argument by *A. E. Thompson.*

WINSLOW, J.   It is well settled that a sale of property may be set aside as fraudulent either (1) because it was induced by false and fraudulent representations which were relied upon by the seller, or (2) because of the existence of an un-

disclosed intention not to pay on the part of the buyer. These are two separate and distinct wrongs: the first is complete without intent not to pay, the second is complete without false representations. Both may be present in a given case, but either is complete and actionable without the other. *Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599.

Both grounds seem to have been urged by the plaintiff in the trial court in this case, but that court negatived the existence of actionable false representations in its findings, and its conclusions in this respect are so manifestly correct that no serious argument was made upon that proposition in this court. If it could be said under any theory that there was a false representation made by Leimer as to an existing fact, it conclusively appears that the plaintiff did not rely thereon in making the transfer of the note to Leimer, and hence this supposed ground of liability need not be considered.

As to the second ground, the law is settled that mere insolvency is not sufficient to prove intent not to pay; neither is a mere failure to disclose such insolvency when not interrogated. The buyer may hold his peace if he be not asked; otherwise the door of hope would be well-nigh closed to the struggling merchant whose liabilities exceed his assets. If there be an honest purpose to pay, undisclosed insolvency does not affect the validity of the transaction; there must also be the preconceived purpose not to pay. All this is conceded by the appellant, but it is contended that, if the facts are such that the purchaser could have no reasonable expectation of being able to pay, this is equivalent to a definite purpose not to pay, as matter of law. Following this legal postulate, it is argued with force that the situation of Leimer was so desperate when he took the note in question that he could have had no reasonable anticipation or hope of ever being able to pay, and hence that the court should have found the definite purpose not to pay as a legal conclusion from the facts. There are some authorities which give support to this conten-

German Nat. Bank v. Princeton State Bank, 128 Wis. 60.

tion, notably *Talcott v. Henderson,* 31 Ohio St. 162; *Maxwell v. Brown S. Co.* 114 Ala. 304, 21 South. 1009; *McKensie v. Rothschild,* 119 Ala. 419, 24 South. 716; *Davis v. Stewart,* 8 Fed. 803; *Jaffrey v. Brown,* 29 Fed. 476. This court, however, has not adopted that rule. On the contrary, in the case of *David Adler & Sons C. Co. v. Thorp,* 102 Wis. 70, 78 N. W. 184, it was said by way of quotation from a New York authority:

"An honest, though abortive, purpose to continue business and pay for the goods is consistent with the vendee's own knowledge of his own insolvency; and the purchase is not fraudulent when made with such intent, though founded in delusion and unreasonable expectations."

There were also cited approvingly in the *Adler Case* the cases of *People ex rel. Ellis v. Healy,* 128 Ill. 9, 20 N. E. 692; *Burchinell v. Hirsh,* 5 Colo. App. 500, 39 Pac. 352; and *Ill. L. Co. v. Flynn,* 108 Mich. 91, 65 N. W. 519. In the first of these cases it is said that "it is not enough that the defendant knew himself to be insolvent and had no reasonable expectation of paying;" in the second it is said: "Reasonable expectation not to pay is not enough; there must be design not to pay;" and in the third it is said: "What constitutes fraud in such a case is the purpose of the buyer not to pay for the goods. This is not determined by what purpose some other less hopeful of success in his ventures might under like circumstances have entertained, but to constitute the purchase fraudulent on this ground there must have been an *actual* intent on the part of the purchasers to obtain the goods without paying for them." So, also, in *Watson v. Silsby,* 166 Mass. 57, 43 N. E. 1117, it is said that, "to constitute a fraud which will avoid the contract, there must be a *definite conscious* intent not to pay."

Thus it appears that the doctrine is well supported by authority, and we confess that it seems to us entirely reasonable. Were the rule otherwise, the honest hope of the optimist

would be condemned as dishonest because a pessimist under the same circumstances would not have entertained it. Many a man of optimistic disposition, with youth and energy on his side, has honestly deemed that he could continue business and pay his debts under circumstances which to another of cooler blood would have seemed desperate if not hopeless, and has succeeded. The law permits him to do this without branding him as dishonest. Of course, the circumstances may all be shown, and their desperate character may well justify an inference that there was no honest hope of success, but rather a conscious intent to obtain property without paying for it; but this inference is one of fact, not of law. The trial judge so treated the present case, and held, as a conclusion of fact, that Leimer did not have the purpose not to pay when he obtained the note in question. Had he held the other way, we should have had no difficulty in affirming the holding; but, on the other hand, we cannot say, in view of the deference due to the trial court's conclusions of fact, that his holding was so clearly against the preponderance of the evidence that it should be set aside.

It is said that when one sells the promissory note of a third person, and conceals the fact of the insolvency of the maker, the sale may be avoided (citing *Brown v. Montgomery,* 20 N. Y. 287), and it is argued that the transaction before us was, in effect, the sale of Leimer's own note, and that the same principle should apply. We do not, however, regard the present transaction as the sale of a note by Leimer. In substance, he purchased the $2,500 note of the plaintiff, and gave his note for the purchase price, just as a merchant might purchase goods and give his note. The note was simply the evidence of his promise to pay his own debt, which was put in writing instead of being permitted to rest in parol.

Costs were taxed as in a tort action, and the appellant claims that the action is upon contract for money had and received, and hence that the taxable attorney's fees should have

been limited to $25. The complaint charges the fraudulent procurement of the note by Leimer, the acquirement thereof by the defendant bank without consideration and with knowledge of the fraud, the collection of the same by the receiver and the conversion of the proceeds by him as receiver, the turning over of the assets to the defendant bank at the close of the receivership, a demand of payment with interest from the date of the conversion, and a statement that, because of the "fraud and conversion" aforesaid, the plaintiff has suffered damage in the sum of $2,500 with interest.

We regard the complaint as quite clearly stating a cause of action in tort. There was no original contract relation between the parties to this suit. Of course, the plaintiff could have waived the alleged tort and sued simply upon implied contract for money had and received, but when he sets forth fraud and conversion as the gist of his action, and says that by reason of the "fraud and conversion" he has suffered damage in the sum for which he claims judgment, we think it clearly appears that he sues to recover damages for the tort. The cases of *Rawson Mfg. Co. v. Richards,* 69 Wis. 643, 35 N. W. 40; *Van Oss v. Synon,* 85 Wis. 661, 56 N. W. 190; and *Casgrain v. Hamilton,* 92 Wis. 179, 66 N. W. 118, are all cases where there was a contract between the parties, and in all of them it was held that in such case, though conversion be alleged, the action would be deemed upon the original contract where the conversion was not charged to be unlawful, wrongful, or fraudulent. The distinction between those cases and the present case, where there was no original contract between the parties, is plain.

*By the Court.*—Judgment affirmed.

CASSODAY, C. J., took no part.