[No. 10424.  Department Two.  June 24, 1912.]

HATTIE A. HEWETT, *Appellant*, v. FRANK .O. DOLE *et al.*,
*Respondents*.[1]

DEEDS—CONSIDERATION—EVIDENCE.  Evidence examined and held
to establish that part of the consideration for deeds was the as-
sumption of specified debts of the grantor.

CANCELLATION OF INSTRUMENTS—FRAUD—EVIDENCE—SUFFICIENCY.
Fraud by the grantee, as ground for the cancellation of deeds, must
be proved by clear and convincing evidence, and is not shown by the
mere breach of the vendee's contract to pay certain debts as part
of the consideration; since the necessary preconceived intention not
to perform is not established merely by subsequent failure to perform.

CANCELLATION OF INSTRUMENTS—ACTION FOR FRAUD—RELIEF—
FAILURE OF CONSIDERATION—DAMAGES.  In an action to cancel deeds
for fraud, under a complaint asking general relief, the plaintiff may
be given damages for partial failure of consideration although fail-
ing to establish the fraud.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered October 17, 1911, upon
findings in favor of the defendants, dismissing an action for
cancellation.  Reversed.

*A. M. Abel* and *Geo. D. Abel*, for appellant.

*Bridges & Bruener*, for respondents.

ELLIS, J.—Action to rescind and cancel two transfers of
property from the plaintiff to the defendant Frank O. Dole;
one, a deed of certain real property in the city of Aberdeen,
Washington, dated July, 29, 1911; the other, a bill of sale
of certain furniture, dated August 5, 1911; on the alleged
ground that both transfers were induced by fraudulent rep-
resentations on the defendant's part.  The plaintiff was a
woman of considerable business experience, and had for some
years prior to June, 1911, been engaged in the millinery

[1] Reported in 124 Pac. 374.

business, in Aberdeen, but at that time had discontinued it. She owned the real estate in question, and had fitted up the four houses thereon for renting as apartments. One Sjolseth held a mortgage upon the property, which at the time, with the unpaid interest, amounted to $6,505. She owed many other debts which she was unable to pay. The only other real estate which she owned consisted of two timber claims in Klickitat county. These were mortgaged for sums aggregating $2,500. These mortgages were in process of foreclosure, and with accrued interest and expenses amounted to $3,176.80.

The defendant Frank O. Dole had for some years been engaged in the real estate, brokerage and loan business in Aberdeen. Early in June, 1911, the plaintiff applied to him to obtain a loan to take up her indebtedness, and though the evidence is conflicting as to what extent she divulged her financial condition, it seems probable that he then learned approximately the amount of her indebtedness. He visited her timber claims, endeavored without success to sell them, sought to induce the mortgagee to pay the plaintiff $500 and accept a deed in satisfaction of the mortgages, which was refused, and finally advised the plaintiff to deed the claims to the mortgagee to avoid deficiency judgments. This also the mortgagee refused. Efforts to do anything with the timber claims were then abandoned. He had an interview with Sjolseth, who held the mortgage upon the apartment houses, and endeavored, also without success, to secure an additional loan. The plaintiff then authorized the defendant to sell the Aberdeen property, and finally suggested that he purchase it himself. He at first declined, stating that he was unable to do so, but after further consideration, consented provided he could get an extension of time upon the mortgage. He and the plaintiff visited Sjolseth, who agreed to an extension for two years, on condition that the defendant would assume the mortgage and pay the interest each month so that the debt might not increase. A written agree-

ment to that effect was entered into between Dole and Sjolseth, on July 29, 1911.

On the same day the plaintiff deeded to the defendant the property in question, the recited consideration being one dollar "and other and further considerations," the assumption of the Sjolseth mortgage, and all lawful claims by judgment, attachment, or otherwise, and all taxes and assessments against the property. The deed reserved to the plaintiff the use of one of the houses for six months. A part of the furniture in the houses had been purchased by plaintiff on two conditional sale contracts, the remainder—but how much does not appear—was apparently encumbered by a chattel mortgage held by a Mrs. Hudson, for $425. Upon what is called in the record the Kaufman & Company contract, she had paid $195, leaving a balance of $205 and interest; and upon what is called the Barker contract, she had paid $50, leaving a balance of $350 and interest. Shortly after the conveyance of the real estate, defferences arose between the parties, and after some negotiation, the defendant, on August 5, 1911, scured from the plaintiff a bill of sale of the furniture. The recited consideration was one dollar and the assumption by the defendant of the amounts due upon the contracts. It is admitted that, at the time, the defendant paid the plaintiff $100, which the defendant contends was an additional consideration for the furniture and for her relinquishing her right to the possession for six months of one of the houses reserved in the real estate deed. The plaintiff contends that it was solely in consideration of her surrendering possession.

The plaintiff testified that the defendant, for the transfer of the real estate, agreed to pay her $1,000, pay the Hudson chattel mortgage of $425, assume the Slojseth mortgage of $6,505, and pay her entire outstanding indebtedness, all of which she claims was then computed by the parties at $13,000. She testified that, on the transfer of the personal property, she was to receive $300 cash and the amounts

which had been paid by her upon the conditional sale contracts, and that the defendant was to assume payment of the balance due upon each of the contracts.

The defendant testified that, in addition to the considerations mentioned in the deed, he was to pay $500 cash, and eight open accounts, aggregating about. $1,530. These accounts were mainly such as had been contracted by the plaintiff in remodeling the houses, and were lienable. There was a judgment referred to as the Bradshaw judgment for $580.11, and a judgment referred to as the Staadecker & Company judgment, the exact amount of which does not appear. All of these items, amounting to near $9,500, the defendant admits he agreed to pay as consideration for the deed of the real estate. A list of some ten accounts aggregating $1,469.87, he disclaims ever having assumed, and testified that he never knew of them until after the transaction was closed. He testified that, by agreement with the plaintiff, he paid the $500 agreed cash payment, by assuming the $425 Hudson debt secured by chattel mortgage, and a discharge of a debt of $75 due to him from the plaintiff for which he also held a chattel mortgage. As to the transfer of the personal property, he testified that the only consideration was the assumption of the indebtedness upon the conditional sale contracts, and the $100 paid at the same time for the furniture, and a surrender of plaintiff's right of occupancy of one of the houses for six months.

The fraud alleged is that the defendant, while occupying a fiduciary relation to the plaintiff, induced her to make the transfers to him, by promising to pay all of the sums and obligations as claimed by her, he having at the time no intention of paying them; that the defendant was insolvent at the time, which fact was known to him but unknown to the plaintiff; that he induced her to have the papers drawn by his attorney without consulting an attorney of her own selection, and thus the true considerations and full agreements were never reduced to writing. The court found in

favor of the defendant as to the consideration for both transfers, and that he practiced no fraud, and directed that the action be dismissed upon the defendant's giving security, either by mortgage upon the property or otherwise, for the payment of all claims and debts which were not liens against the property, which were admitted by the defendants to have been assumed by them. The judgment recites that the defendants have filed in court sufficient instruments in writing and receipts from all creditors of plaintiff whose debts defendants agreed to pay, not liens against the property, releasing the plaintiff from such debts, and have filed a release of the Hudson chattel mortgage for $425; and dismisses the action, with prejudice, and awards the plaintiff her costs in the sum of $103.80. The plaintiff appeals.

There are but two questions presented: What were the agreed considerations for the respective transfers? and, Were the transfers induced by fraud? On the question of consideration, there was no greater burden upon the appellant than upon the respondents. Both parties admitted that the instruments did not recite the true consideration. Neither relied upon the written instruments as expressing the true agreement. A wide latitude of proof was, therefore, open to both sides. A comparison of the testimony of the parties relative to the real estate transfer shows that the appellant claims that the following amounts were to be paid by the respondent, which respondent denies: $1,000 cash to the appellant, the Hudson chattel mortgage of $425, and a list of ten open accounts amounting to $1,469.87. These three items, aggregating $2,894.87, constitute the real difference between the claims of the parties as to the agreed consideration for the real estate transfer. While the mortgages on the Klickitat timber claims were referred to in evidence, there seems to be no serious contention that the respondent was to assume these.

The respondent contends that he did not know of the open accounts at the time of the transfer, and hence could

not have assumed their payment. The evidence shows, however, that he talked with an attorney, Boner, who had for collection claims amounting to some $1,600 against the appellant, among them one which had been reduced to judgment and which the respondent admits he assumed. This was prior to the transfer. Boner testified that it was his recollection that they talked over the amount of the claims, and that he told respondent they amounted to about $1,600. He did not give respondent a list of the accounts nor the names of the creditors. Respondent admitted that he had a conversation with Boner as to the judgment, but denied that other claims were mentioned. Henry Barker, senior member of the firm of Barker & Company, testified that the respondent, in the latter part of July or early in August, called on him to ascertain the amount unpaid upon the Barker conditional sale contract; that he then told Barker that he had bought the appellant's property, and,

"He said it was a good deal of work to straighten her accounts up. He had assumed a $13,000 debt—about that—and it would be a great deal of work to straighten it up. He said the accounts were a mix-up. I said, 'How is that? Is she in debt much?' and he said, 'I will have to take up $13,000; that is all.' "

The respondent denies this conversation, and Barker's son who was present says the debts were not mentioned. It does not affirmatively appear, however, that the son was present during the entire conversation. In addition to the corroboration of appellant furnished by the testimony of Boner and Barker, it must be remembered that the respondent had been, for about two months prior to the transfer, endeavoring to secure a loan or make a sale of appellant's properties, with a view to taking up her debts. It seems only reasonable to assume that she had then told him what those debts were, as she says she did. Moreover, there is no evidence that she had ever abandoned the original purpose of clearing up her debts by some disposition of this property. In view of the whole

of the evidence and the situation and reasonable intention of the parties, we think there was a preponderance in favor of the appellant's claim, and that the disputed sums and accounts were to be paid by respondent as part of the consideration for the real estate transfer.

On the other hand, we find no such preponderance in appellant's favor as to the sale of the personal property. The furniture was all second hand. It is hardly reasonable to suppose that respondent would agree to pay the full cost price for any of it. The appellant was not corroborated by any evidence in her claim that the respondent, in addition to the $100 paid at the time to secure possession of the property and an assumption of the unpaid part of the purchase price, was also to pay $300 cash and repay to the appellant all sums which she had paid upon the two conditional sale contracts. As to the consideration for the transfer of the furniture, we find no sufficient basis in the evidence for disturbing the finding of the trial court.

There remains to be discussed the charge of fraud. It is elementary that one asserting fraud must prove it by clear and convincing evidence. There was no evidence that the respondent was, or is, insolvent. While in a sense he occupied a fiduciary relation to the appellant, there was no evidence that he abused that relation. If it was the agreement, as we think it was, that he should pay, in addition to the debts assumed in the deed, $1,000 cash and the other debts as claimed by appellant, he agreed to pay a fair value for the property, as shown by the evidence of value which we deem it unnecessary to discuss. While the respondent's attorney did prepare the papers, it is undisputed that respondent offered to allow the appellant's former attorney to do that work. There is no evidence that the respondent did not enter into the contract in good faith, and with a then intention to pay whatever he then agreed to pay. The dispute arises as to what he then agreed to pay. Our finding in appellant's favor on this point does not import fraud into the

inception of the contract. The payment of these or any sums was not made by the deed a condition subsequent, the failure to perform which would defeat the deed. The failure to pay constituted, therefore, a mere breach of contract. The mere denial of liability and failure to pay was neither a failure of consideration nor a proof of fraud in the inception of the contract such as would entitle the appellant to a rescission. Her remedy was for damages for breach of the contract.

We have no doubt that the weight of authority sustains the appellant's contention that, if the promise is made merely as a means of deceiving and with no intention to perform, it constitutes such fraud as will support an action for deceit and entitle the injured party to a rescission. 20 Cyc. 22. *Brison v. Brison*, 75 Cal. 525, 17 Pac. 689, 7 Am. St. 189; *Cerny v. Paxton & Gallagher Co.*, 78 Neb. 134, 110 N. W. 882, 10 L. R. A. (N. S.) 640; *Atkins v. Atkins*, 195 Mass. 124, 80 N. E. 806, 11 L. R. A. (N. S.) 273.

We have, however, been cited to no authority holding that a preconceived intention not to perform is established merely by a subsequent failure or refusal to perform in the absence of antecedent insolvency, except in those cases where the consideration for the transfer was an agreement to support aged or infirm persons. Such cases constitute a recognized exception to the general rule. They usually involve a fiduciary relation of the most positive character. In such cases the promise to support usually constitutes the whole consideration, and the failure to perform may reasonably be held a total failure of consideration. In any event, the usually present flagrant abuse of the fiduciary relation, and the usual inadequacy of any other relief, impels a court of equity to grant a rescission "upon principles not applicable to ordinary conveyances." *Bogie v. Bogie*, 41 Wis. 209, 219; *Payette v. Ferrier*, 20 Wash. 479, 55 Pac. 629; *Gustin v. Crockett*, 51 Wash. 67, 97 Pac. 1091. The case before us falls directly within the rule announced in *Lawrence v.*

*Gayetty*, 78 Cal. 126, 20 Pac. 382, 385, 386, where the court said:

"It must be borne in mind that the plaintiff did not contract to convey upon the performance of the contract on the part of the defendants; therefore his promise was not dependent upon theirs; nor was there anything appearing in the deed, or in the contract under which it was made, showing or tending to show that a compliance with their promises was regarded as a condition subsequent, or that a failure to perform on their part should in any way effect the title conveyed to them. The case is precisely the same in principle as if the plaintiff had conveyed and taken a note for the purchase money, and the defendants had failed to pay the same. The fact that the promise is to expend money in making certain improvements instead of a promise to pay money to the plaintiff can make no difference as to the right to rescind on the ground that the grantees have failed to perform the covenants on their part. Certainly it would not be seriously contended that the mere failure by the vendee to pay the purchase money could entitle the vendor to rescind the contract and recover back the land; and yet that is the ground upon which the plaintiff in this action must recover under these findings, if at all . . . Such a rule may work hardship in individual cases, and this may be one of those cases; but to hold that a vendee of real estate could, for a failure to pay the purchase money, repudiate his deed and recover the land, would render real estate titles dangerously uncertain, and result in the most serious consequences. The judgment is not sustained by the findings."

See, also, *Chicago, T. & M. C. Ry. Co. v. Titterington*, 84 Tex. 218, 19 S. W. 472; Pomeroy, Equity Jurisprudence, vol. 6 (1905 ed.), § 686; Waterman, Specific Performance, § 189; *German Nat. Bank v. Princeton State Bank*, 128 Wis. 60, 107 N. W. 454, 6 L. R. A. (N. S.) 556, 8 Am. & Eng. Ann. Cases 502. We think the trial court correctly held that there was no such clear and convincing evidence of fraud as to warrant a rescission. The complaint, however, alleged, and the evidence established, facts sufficient to entitle the appellant to relief in damages, and the prayer was for general relief. The appellant is entitled to a judgment

for the $1,000 cash payment, which we find the respondent agreed to make, less $75 which appellant owed respondent, with interest on the balance at the legal rate from July 29, 1911; and also for the amount now due and unpaid upon the following accounts, which we find he also agreed to pay in addition to those disposed of in the original judgment:

"City Retail Lumber Co.; Ward T. Smith; R. A. Buell; B. O. Case & Co.; D. B. Fisk & Co.; Uhry & Co.; Jacobs & Co.; Carl T. Smith; G. H. Publishing Co. two accounts; The Grays Lithograph Co.; Quick Print Co."

Since the evidence before us does not show the exact amount now due upon these claims, the cause is remanded with direction to the trial court to take evidence thereon, ascertain the amounts, and modify the judgment in accordance with this opinion.

MOUNT, MORRIS, and FULLERTON, JJ., concur.