[No. 19517. *En Banc.* October 14, 1926.]

# PETER JACQUOT, *Respondent, v.* FARMERS STRAW GAS PRODUCER COMPANY, *et al., Appellants.*[1]

[1] FRAUD (4)—FRAUDULENT REPRESENTATIONS—MATTERS OF FACT OR OPINION. It is actionable fraud to induce the sale of the right to manufacture and sell farmers' gas plants by false representations as to the cost and places at which the gas plants could be manufactured at a reasonable profit.

[2] FRAUD (3)—FRAUDULENT REPRESENTATIONS—NATURE OF FAILURE OF PROMISE—PERFORMANCE. In such a case, it is actionable fraud to induce the sale by promises to furnish a complete plant and assist in getting the business started, where there was no intention at the time to fullfill the promises.

[3] FRAUD (1)—ELEMENTS OF ACTUAL FRAUD—INTENT—SCIENTER. Fraudulent representations inducing a sale are actionable without proof that the defendant knew at the time that the statements made as true were in fact false.

[4] EVIDENCE (59)—RELEVANCY—SIMILARITY OF CONDITIONS. In an action for misrepresenting the cost of manufacturing a farmers' gas plant, it is not inadmissible to show the cost of manufacturing a somewhat similar plant, where the differences in construction and cost were pointed out, and defendants were not surprised thereby.

[5] APPEAL (448)—HARMLESS ERROR—RULING ON QUESTIONS TO WITNESS. Error cannot be predicated on statements of a witness not responsive to questions on cross-examination which would have been admissible on redirect.

[6] APPEAL (460)—HARMLESS ERROR—INSTRUCTIONS—PREJUDICIAL EFFECT. It is not prejudicial error to refuse to instruct the jury to disregard an occurrence at a former trial, where the matter was of no moment and could not have affected the jury.

[7] APPEAL (349)—ASSIGNMENT OF ERRORS—FORM AND REQUISITES. Error assigned on allowing a witness to testify to different statements alleged to have been made by appellants away from the presence of the respondent will not be considered where the matter is not particularly pointed out and violation of the rule is not disclosed by the record.

[1]Reported in 249 Pac. 984.

[8] APPEAL (406)—REVIEW—DISCRETION—NEW TRIAL. The denial of
a new trial on the ground of the deafness of a juror will not be
disturbed on appeal where the incapacity was denied by the
juror, who was under observation during the trial.

[9] NEW TRIAL (38, 40)—NEWLY DISCOVERED EVIDENCE—IMPEACH-
MENT OF WITNESS—PROBABLE EFFECT. A new trial for newly dis-
covered evidence is properly denied where the evidence to con-
tradict a witness was of no consequence.

Appeal from a judgment of the superior court for
Benton county, Truax, J., entered February 18, 1925,
on the verdict of a jury in favor of the plaintiff, in an
action for fraud. Affirmed.

*C. L. Holcomb, Bruce E. McGregor,* and *Cox &
Martin,* for appellants.

*Moulton & Jeffrey* and *Lee C. Delle,* for respondent.

FULLERTON, J.—On June 9, 1922, the appellant Farm-
ers Straw Gas Producer Company, a corporation, on
the one part, and the respondent, Peter Jacquot, and a
concern known as the Yakima Ranches Co., on the other,
entered into a contract, whereby the party on the one
part sold to the parties on the other the right to manu-
facture and sell a gas producing plant, a patented de-
vice, in the counties of Benton and Klickitat, in the
state of Washington. The consideration paid for the
right was five thousand dollars, and was paid by the
execution of two notes, each for the sum of two thou-
sand five hundred dollars, the one by the respondent
Jacquot and the other by the Ranches Company. The
Farmers Straw Gas Producer Company was repre-
sented in the negotiations leading up to the sale by the
appellants William Hollingsworth and O. M. Collins.
The note of Jacquot was made payable to Hollings-
worth, who endorsed it prior to maturity to the Frank-
lin Sales Company, and by that company it was en-
dorsed to the Baker-Boyer National Bank of Walla

Walla. Jacquot was compelled to pay the note at the suit of the bank, and brought the present action against the appellants to recover the amount paid thereon, together with certain other sums he had paid in a fruitless attempt to realize from his purchase of the gas plant. On a trial by jury in the court below, the respondent obtained a verdict of the jury against all of the appellants. The appeal is from the judgment entered on the verdict.

The patented device, the right to manufacture and sell which was transferred to the respondent and his co-purchaser, was a plant designed to manufacture combustible gas by the destructive distillation of straw and other fibrous vegetable matter. Roughly speaking, it consisted of three parts. The first was a retort into which the vegetable matter intended for distillation was packed. Beneath was a furnace for the application of heat. As the matter in the retort was heated, it gave off a gas which passed into the second of the parts, called a scrubber, by means of which the gas was cleansed. After passing through the scrubber, the gas passed to the third of the parts, which was a water-chamber cylindrical gasometer of the ordinary type, intended to store the gas produced until such time as it was desired to withdraw it for consumption. The primary purpose of the device was to furnish gas for household use, such as lighting and heating. It was thought to be specially adapted for use on farm property, where the necessary material for distillation and fuel was practically waste. It was among the persons owning such property that the purchasers expected to find their principal customers for the plant.

The respondent based his cause of action on fraud and deceit. In his complaint he alleged that the appellants represented to him that a single completed plant

could be manufactured at a cost not exceeding two hundred fifty dollars, and that it could be manufactured at any ordinary tin shop; that they would deliver to and leave with him a completed farm sized gas plant for demonstration purposes; and that they would assist him in demonstrating and obtaining orders for plants for the purpose of enabling him to get the business started. He further alleged that the representation that a single plant could be manufactured at a cost not to exceed two hundred fifty dollars and the representation that they could be manufactured at any tin shop were false and fraudulent, known to be such at the time by the appellants, and were made with the intent and purpose to deceive him. He alleged that in truth and in fact it would cost to manufacture a single plant approximately seven hundred dollars; that they could not be manufactured at any tin shop; and that, on the contrary, they could be manufactured only at machine shops in the large centers. As to the other representations, he alleged that the appellants had no intention of performing them when they were made; that they were made to induce him to make the purchase, and that the appellants did not in fact perform as they promised.

[1] The appellants first assign error on the rulings of the court denying their motion for a directed verdict, and denying their motion for judgment notwithstanding the verdict. Under these heads the appellants question the sufficiency of the evidence to sustain a judgment against them. The argument on the questions is two-fold. It is first contended that the evidence shows that the representations as to the cost of manufacturing the plant and the places at which plants could be manufactured were mere expressions of opinion; and second, that if they were representations as to fact, the evidence fails to show that any misrepre-

sentations were made. As to the charge that they promised to leave a completed plant with the respondent and assist him in getting the business started, it is argued that these were at most but promises to do something in the future, giving rise, perhaps, to an action for a breach of contract, but in no sense fraudulent. But we are clear that none of these contentions is well founded. The cost of manufacture and the places at which they could be manufactured were material circumstances to the respondent, and to these matters he principally directed his inquiries of the appellants. If they could be manufactured at the cost and the places he claims they represented they could be manufactured, a ready sale could possibly be found for them at a reasonable profit; whereas if they cost to manufacture, as he claims the sequel proved, more than two and a half times the represented cost, and if they could be manufactured only at machine shops in the large centers, the cost of the plant made sales practically prohibitive. The evidence on the part of the respondent sustains his claims in this regard. There was substantial evidence that the appellants made the representations as contended by the respondent, and evidence that they made them as matter of fact and not as matter of opinion. There was evidence on the other side, it is true, but this but made the question one of fact for the jury, not a question of law for the court.

[2] As to the second of the representations, it is undoubtedly the general rule that a promise to do something in the future is not, although it may not be performed, a ground upon which to predicate an action of fraud. But the rule has an exception as well established as the rule itself. If the promise is made for the purpose of inducing a party to enter into an agreement which he would not otherwise enter into, and with a

present intent on the part of the person making the promise not to perform, it is a fraud on which an action can be predicated. *Hewett v. Dole,* 69 Wash. 163, 124 Pac. 374; *Lovell v. Dotson,* 128 Wash. 669, 223 Pac. 1061; *Kritzer v. Moffat,* 136 Wash. 410, 240 Pac. 355.

[3] It is further argued that the evidence fails to show that the representations were fraudulently made, that is to say, that they were made with the intent to deceive; that *scienter* is a necessary element in this class of cases, and that the appellants did not know that they were misrepresenting the facts as to the cost of the plant, and as to the places in which it could be manufactured. As to question of intent, we are clear that it was for the jury. What the intent of the appellants was must be gathered from their conduct as a whole. Without setting forth practically the entire record, the reasons for our conclusion cannot be made to appear. This is impractical and unnecessary. It is enough, therefore, to say that the evidence convinces us that a sale was the thought uppermost in the minds of the appellants, and that the jury were warranted in finding that they intended the respondent should believe their statements as to the cost and place of manufacture.

As to the question of *scienter,* this court has not adopted the rule to the extent the appellants contend. We have held the rule to be that if a person states as true material facts susceptible of knowledge to one who relies and acts thereon to his injury, he cannot defeat recovery by showing that he did not know his representations were false, or that he believed them to be true. *Hanson v. Tompkins,* 2 Wash. 508, 27 Pac. 73; *Sears v. Stinson,* 3 Wash. 615, 29 Pac. 205; *West v. Carter,* 54 Wash. 236, 103 Pac. 21; *Grant v. Huschke,* 74 Wash. 257, 133 Pac. 447; *May v. Roberts,* 126 Wash. 645, 219 Pac. 55; *Pratt v. Thompson,* 133 Wash. 218, 233 Pac. 637.

In the case of *West v. Carter, supra,* we used this language:

"And this is the just theory, for the result to the party who is deceived is exactly the same whether the intention of the party upon whose representations he relied was fraudulent or not. If one by misrepresentation, even though innocent, is the cause of damage and injury, it would certainly be inequitable to visit that damage and injury upon the head of one who was in no way to blame, rather than upon the one who was the cause of such damage or injury."

In *Grant v. Huschke, supra,* we said:

"The appellant contends that there was no evidence that he knew that his representations were false, that such knowledge is an essential element in the establishment of actionable fraud; and that, in the absence of proof of such knowledge, the admission of evidence as to his representations was error. It is usually held that representations to be actionable must be made *scienter,* but it does not follow that actual knowledge of the true facts or of the falsity of the representations must be shown. Representations, as of his own knowledge, of material and inducing facts susceptible of knowledge, made by a vendor in ignorance of the facts, but with the knowledge that the vendee is relying upon the representations as true and under circumstances reasonably excusing the vendee from investigating for himself, are actionable on the part of a vendee so relying to his injury. In such a case, the fraud of the vendor consists in representing as true, with knowledge that it is being relied upon as true, that which he did not know to be true. This rule is supported by the trend of modern authority and has been consistently adhered to by this court."

In *May v. Roberts, supra,* we said:

"It is immaterial whether appellants made the representations (if they were made) innocently, believing them to be true, or fraudulently, knowing them to be false; the result to the respondent would be the same in either event if he relied on them. The ques-

tion is, were misrepresentations made and not the purpose or intent in making them."

So in *Pratt v. Thompson, supra,* we said:

"It makes no difference whether the representations were made through mistake or with full knowledge of the facts. Even though such representations were made through honest mistake they constitute fraud in law."

The rule, as we have announced it, is not peculiar to this state. In Sutherland on Damages (3d ed.), § 1169, it is said:

"But the doctrine which seems supported by the preponderance of authority is that if a person states as of his own knowledge material facts which are susceptible thereof to one who relies and acts upon them as true it is no defense to an action for deceit, if the representations are false, that the person making them believed them to be true. The falsity and fraud consist in representing that he knows the facts to be true of his own knowledge when he has not such knowledge."

So in *Hanson v. Tompkins, supra,* we quoted from Mr. Justice Story, to the following effect:

"Whether a party thus misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false."

We, therefore, find no reason for disturbing the judgment on the ground that the evidence does not justify a recovery. In so far as the case rests on questions of fact, at best there was but a conflict in the evidence, making the verdict of the jury conclusive in so far as this court is concerned.

On the question of law discussed, our cases, as well as the prevailing rule, are to the effect that a plaintiff, in order to recover in damages or to set aside a contract because of false representations, is not obligated to show that the representations were knowingly falsely made, but may recover if he shows that they were made as representations of fact, even though the person making them did not know them to be false, or even believed them to be true.

Of the errors assigned which are thought to require a new trial, we shall not specially notice the contentions that the respondent did not believe or act on the representations made to him, or that he had an opportunity to test the truth of the statements and did not do so, or that by his acts ratified the contract after knowledge that the representations were untrue. These present no question of law. They depend upon the view taken of conflicting evidence, on which the verdict of the jury is controlling.

[4] A machinist and metal worker by the name of Wagini manufactured a plant similar in design and purpose to the plant of the appellants for a resident of another part of the state of Washington. He was called as a witness for the respondent and testified as to the cost of the plant. It is argued that the court erred in admitting his testimony, the reason given being that the plant was constructed of heavier materials than the appellants' plant required, was riveted in places where the appellants' plant required welding, and was otherwise of more costly construction. But in the direct testimony of the witness these differences were pointed out, and estimates were given by the witness of the difference in cost because of these differences in construction. Moreover, the appellants were given full opportunity, and availed themselves of the opportunity, to cross-examine. We cannot think

the evidence inadmissible. The cost of manufacturing the plant was a material inquiry at the trial, and this evidence had a tendency to show such cost. But the appellants, concerning this witness, say in their brief:

"Appellants were given no opportunity to combat his testimony because it was all based upon the construction of a gas producing machine built by him for one Celtaux at Uniontown, Washington. No person able to testify concerning the facts about the Uniontown plant was present at the trial, nor did appellants have any information that such testimony would be given nor did they believe that testimony concerning the details and cost of construction of the Uniontown plant were applicable to this case. In a very adroit manner the testimony of Wagini was staged to confuse the jury, and to make the jury believe that all the expensive details Wagini put into the Uniontown plant were facts equally applicable to the plant to be made and sold by respondent."

We cannot think these strictures are justified. We find nothing in the record to indicate that there was anything unusual in the manner in which the witness was called to testify. He was in regular attendance upon the court, was called in his turn, and was examined in chief and cross-examined, as any ordinary witness. It may be that the appellants did not have at the place of trial any witness to combat his testimony. But this, it must be at once manifest, is not a ground for excluding his testimony, or a ground for striking it after it had been admitted. To the charge that the appellants had no intimation that such testimony would be given, there are two answers. The first is that it is an immaterial circumstance. It is only where a party has been misled by artifice or fraud that he may complain of surprise at the testimony of his opponents' witnesses, and there is nothing of this in the present record. The second is that there was a former trial of

the cause in which the witness testified. There is no contention that his testimony materially differed at the last trial from his testimony at the first, and, seemingly, if his testimony was utterly false, the appellants at least had the opportunity to make it so appear.

[5] Mrs. Jacquot, the wife of the respondent, testified to representations made by the appellants to induce a sale. In her cross-examination she added to these representations, making statements not strictly responsive to the questions propounded to her. These the court refused to strike on the appellants' motion. While complaint is made of the ruling of the court, we find no reversible error in the ruling. The matter complained of was stated as a part of the original conversations, and had the court struck them as not responsive they would have been admissible on re-direct examination. The appellants' ground of complaint is, therefore, only to the order in which the testimony was admitted, not to its competency or materiality. This is not ground for a re-trial.

[6] There were, further, certain bandying words between the witness and counsel conducting the cross-examination concerning an occurrence at the former trial, in which each questioned the veracity of the other. The court refused, on the appellants' request, to instruct the jury to disregard it. This the court did not do, stating as a reason a consideration that was perhaps not sound. But while we think the court might well have instructed the jury as requested, we find no cause to direct a new trial because it did not do so. The matter was in itself of no particular moment. It in no way touched the merits of the cause on trial, and we think it would be too much to say the verdict of the jury was in any way affected by the circumstance.

[7] Concerning the testimony of certain witnesses

by the name of Ludwig, counsel for the appellants, in their opening brief, make this statement:

"The court [meaning this court] also, as will be disclosed by reading the testimony, over the objection of appellants, permitted the Ludwig Brothers to testify to entirely different statements, alleged to have been made to them by the appellants away from the presence of the respondent and in a transaction in no way connected with respondent."

Citation is made to *Hahn v. Brickell*, 135 Wash. 189, 237 Pac. 305, and unquestionably, if the objection is well founded, it is error reversible under the rule of that case. But counsel have not gone into particulars, and our examination of the evidence of the witnesses named does not disclose that the rule was violated.

The objection to the instructions of the court need not be specially noticed. The principal argument is directed against the instruction on the question of *scienter*. This question we have earlier discussed, and as the court followed the rule as we conceive it to be, further discussion is unnecessary. The remaining objections are equally without merit. It is enough to say that the instructions as a whole were unusually complete and fully informed the jury as to the law of the case.

[8] There was a motion for a new trial supported by affidavits. One of the grounds of the motion is that a juror (a woman) was incapacitated as a juror because of her deafness. But the affidavits supporting the charge are not very persuasive, and there were affidavits to the contrary, one by the juror herself. Moreover, the trial judge, who had the juror under his observation throughout the trial, did not give credence to the charge, and it is hardly possible that, if the defect was of such a nature as to incapacitate the juror,

he would not have discovered it.  We do not find the charge substantiated.

[9]  A second ground for the motion was newly discovered evidence.  This was supported by an affidavit to the effect that an examination of the reducing plant at Uniontown disclosed that the witness Wagini, who constructed the plant, had misstated the sizes of the materials used in its construction.  This matter we have hereinbefore noticed, reaching the conclusion that it did not require a rejection of the testimony of the witness.  We think, furthermore, that it does not require a new trial.  Waiving the question whether the appellants have shown sufficient diligence in preparing themselves to meet the testimony of the witness, the matter itself is not of sufficient consequence.  The evidence, was introduced for the purpose of showing the cost of manufacturing the plants, and the witness was but one of a number who testified as to the matter, and, as we have before pointed out, we do not find that contradiction between the testimony of the witness and the statements in the affidavit that the appellants assert there is; and, what is more, where there is a difference, it seems to us that the error is as much apt to be on the side of the maker of the affidavit as it is on the side of the witness.

Since we find no reversible error in the record, the judgment appealed from will stand affirmed.

TOLMAN, C.J., MAIN, MITCHELL, ASKREN, and PARKER, JJ., concur.