[No. 22320. Department Two. July 22, 1930.]

DES MOINES AUTO COMPANY, *Appellant*, v. R. H. TRACY et al., *Respondents*.[1]

*Earl G. Rice,* for appellant.
*C. P. Borberg,* for respondents.

[1]Reported in 290 Pac. 423.

FRENCH, J.—Pursuant to an agreement entered into on December 12, 1928, appellant purchased from the respondents a certain automobile freight business covered by a certificate of convenience and necessity and operating from Seattle to Des Moines, and thence further south. The physical equipment of the business purchased consisted of three trucks and a few tools and accessories. The purchase price was to be six thousand dollars; five thousand dollars to be paid, and which was paid, covering that portion of the freight territory from Seattle to Des Moines which was included in the certificate of necessity under which respondents were operating, and the balance of one thousand dollars to be paid when respondents had secured from the state department the extension certificate covering the territory south of Des Moines.

The extension certificate was thereafter secured, and this action was commenced by appellant to recover damages by reason of claimed fraudulent misrepresentations made by respondents which, it was claimed, were the inducing cause of the purchase by appellant; and respondents, by answer, not only denied all the material allegations of the complaint, but affirmatively asked for judgment for the additional one thousand dollars claimed to be due by reason of the securing of the so-called extension certificate. From a judgment denying the appellant any relief on the ground of fraud, and granting to respondents one thousand dollars for the so-called extension certificate, this appeal is prosecuted.

For some five or six years prior to the time when the transaction involved in this action took place, respondents had been operating, under a certificate of convenience and necessity, an auto freight truck line between the city of Seattle and Des Moines. In connection with this auto truck business of respondents,

they had built up, to some extent at least, an ice business in the summer time, whereby they purchased ice in Seattle and retailed it to various persons living in Des Moines and in the territory south of Des Moines. They had also developed to some extent the business of handling building materials and other merchandising business; the method used being generally that of soliciting and securing orders in advance for the articles of merchandise desired. The respondents, purchasing the materials through certain dealers in Seattle, would collect from the ultimate consumer the full retail price, while they themselves were allowed a dealers discount, and augmented their income in this way.

The appellant corporation really consists of four brothers, known as the Ellington Brothers, Mr. A. C. Ellington being the general manager, secretary-treasurer, and the active participant in the management of the affairs of the corporation, as well as the active participant on behalf of the appellant in making the purchase. The negotiations, which finally resulted in the sale of respondents' business to appellant, started in the spring of 1928, seem to have been abandoned during the early summer months, and negotiations were again commenced later in the season, finally resulting in the sale taking place in December, 1928.

The fraud claimed by appellant is that the respondents represented that the auto freight line which they were transferring was taking in approximately six thousand dollars a year gross revenue, while it is respondents' contention that they represented that they were, from all of their various enterprises, that is, the freight business, and the merchandising business which they had built up in connection therewith, receiving approximately six thousand dollars a year. As a matter of fact the total gross for the freight business in

1925 was $4,342.45; for 1926, $5,247.29; for 1927, $4,-516.48; and the revenues for the year 1928, during a portion of which year the operation was in the hands of appellant, were $3,939.25. We are unable to determine from an examination of the record what the gross revenues were from respondents' merchandising business, but apparently the ice business alone would yield approximately a gross profit of more than one thousand dollars a year, as they purchased this ice at five dollars a ton, retailed it for a cent a pound, and handled on their bonded truck sixty-two tons on which they had to make freight returns, and the testimony indicates that probably a like amount was handled on their unbonded truck.

We have outlined this testimony solely for the purpose of showing that, if the representations were as claimed by respondents, namely, that they were grossing approximately six thousand dollars a year, their statement would probably be approximately correct; whereas, if the representation made was that the freight business was grossing approximately six thousand dollars a year, as claimed by the appellant, then the statement could not be said to be approximately correct. So that, as we see. the issue in this case, it is, was the representation made by respondents that the freight business alone was grossing approximately six thousand dollars a year, or was the representation made that the total business was grossing approximately six thousand dollars a year? Numerous witnesses were called on both sides of this controversy, appellant having the greater number of witnesses, but, in its last analysis, there is but a question of fact involved. It is the claim of appellant that the record clearly shows that the evidence preponderates in its favor. But a preponderance of the evidence is not

enough. In fraud actions, this court has announced the rule to be:

"The rule that, where fraud is charged, in order to sustain it the evidence must be clear and convincing, has been applied by this court when considering in fraud cases whether the evidence was sufficient to take the case to the jury. *Pederson v. Seattle Consolidated Street R. Co.,* 6 Wash. 202, 33 Pac. 351; 34 Pac. 665; *Crary v. Hopkins,* 94 Wash. 424, 162 Pac. 515; *Leibold v. Grosenbaugh,* 126 Wash. 502, 218 Pac. 258. It has also been applied when the court is trying a fraud case *de novo* after it had been tried in the superior court without a jury. *Hewett v. Dole,* 69 Wash. 163, 124 Pac. 374; *German-American Mercantile Bank v. Illinois Surety Co.,* 99 Wash. 9, 168 Pac. 772." *Hahn v. Brickell,* 135 Wash. 189, 237 Pac. 305.

The trial court, in summing up the situation and in commenting on the evidence, reviewed in a general way the fact that all of these parties had some knowledge at least of the transportation business; that appellant, in purchasing this business, had access to all the books and papers which respondents had; that appellant knew of the fact that reports had to be made to the proper state department showing exactly the amount of the freight receipts. The court referred also to the fact that appellant did not commence this action until about the time respondents were seeking to recover their thousand dollars, and finally stated:

"There was a misunderstanding between these parties, and just how much of that misunderstanding was due to the slump in business afterwards, it is now hard to say. It is true, on the other hand, four men have come in and testified that the defendant did represent there was $6,000 worth of freight business alone and $600 in addition per month of merchandise business, which would mean some $7,200 per year. I say, while it is true four men have testified one way and one man the other way—and if the case was perfectly balanced in all other respects it might well mean that the court on the question of fraud and being

called upon to say that one or the other were testifying falsely, might more readily say that one man is more likely to be mistaken than four. It must, nevertheless, be remembered that the four men are, after all, interested to the same extent as the one man is. On the other hand, in addition to that, is the fact that of these four men, three of them admittedly and very frankly stated that they were leaving the proposition in its detail and its working up to Mr. A. C. Ellington, and their conversation was just in a general way with the defendant, whereas Mr. A. C. Ellington was supposed to inquire into the proposition and work out the detail and accept it if it was proved to be all right.

"And, so I come back now to the difficult problem in this case to me: If I could say to myself that I was convinced from the evidence in this case, and that it was clear that it left no doubt in my mind that the defendant had defrauded and misrepresented things, I would not hesitate to make such a finding, but I do not feel that just because I happen to have the last word in the case I should disregard the rules under which I render a decision, and I have thought about it during the trial of the case and in the intervening recesses and the question has constantly presented itself to me whether I am convinced that the defendant, Mr. Tracy, misrepresented the situation. I can't say that. I do not mean that from any sentimental standpoint. I mean it from the cold, hard proposition of the evidence in the case.

"I do not believe that if the proposition was submitted to any open minded man that he could say under all this evidence that he was convinced to that degree required by law."

From a careful examination of the record in this case, taking into consideration the conclusions reached by the trial court, we are unable to say that appellant has sustained the burden of proof by evidence that is clear and convincing.

The judgment is therefore affirmed.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.

HOLCOMB, J., dissents.