**FRUIT INDUSTRIES RESEARCH FOUNDATION, d/b/a Food Industries Research & Engineering, Appellant,**

v.

**The NATIONAL CASH REGISTER COMPANY, Appellee.**

No. 22000.

United States Court of Appeals
Ninth Circuit.

Jan. 23, 1969.

Elwood Hutcheson, Yakima, Wash., for appellant.

John Gavin of Gavin, Robinson, Kendrick, Redman & Mays, Yakima, Wash., for appellee.

Before JOHNSEN,* Senior Circuit Judge, and MERRILL and ELY, Circuit Judges.

ELY, Circuit Judge:

This appeal is from the District Court's order dismissing with prejudice, at the close of presentation of evidence to a jury, a civil action prosecuted by the appellant. That suit was based on alleged fraudulent misrepresentation. Jurisdiction of the District Court was predicated on 28 U.S.C. §§ 1332 and 1441, and the applicable law is that of the State of Washington. Our jurisdiction rests on 28 U.S.C. § 1291.

Appellant, Food Industries, purchased a data processing computer, known as the NCR390, from appellee, National Cash Register (hereafter N.C.R.). Food Industries claims that N.C.R., through its sales agent, one Rasmussen, fraudulently misrepresented that the NCR390 was suitable, appropriate, and adequate for

* Honorable HARVEY M. JOHNSEN, Senior Circuit Judge of the Eighth Circuit, sitting by designation.

service bureau data processing and computer work and that N.C.R. would aid and assist Food Industries by referring customers to Food Industries' computer service bureau so that there would be no need for Food Industries to maintain a sales force of its own to procure patronage.

The District Court determined that Food Industries had failed as a matter of law to present sufficient evidence from which a trier of fact could properly find from clear, cogent, and convincing evidence that the nine essential elements of fraud had been proved as required by Washington law. We affirm.

Three officers of Food Industries participated in making the decision to purchase the computer in question. They were Earl W. Carlsen, President and Managing Director, D. Lloyd Hunter, Vice President, Secretary, and Chief Engineer, and Philip Fluaitt, Treasurer and Office Manager. It is undisputed that Carlsen and Hunter had no previous knowledge of any shortcomings in the performance capabilities of the machine, and it was Carlsen who made the final decision to purchase. Fluaitt, however, was an active agent in dealing on behalf of Food Industries with Rasmussen, N.C.R.'s sales agent, and the record makes it clear that Fluaitt knew, prior to his principal's purchase, of the NCR-390's relatively slow print-out rate. The 390's relatively slow print-out rate. The written contract of purchase was executed in 1961, delivery of the computer was made in 1962, and Food Industries claims that it first became dissatisfied with the NCR390's performance in 1963. Even so, it continued to use the NCR390 until it installed a newer, more expensive computer in 1966.

The complaints of Food Industries concerned an alleged slow input reading rate, a slow print-out rate, an inadequate memory core for the purposes required, and an inadequate capacity to do alphabetical work. Nevertheless, Food Industries does not contend that Rasmussen made any definite misrepresentations concerning these alleged specific defects, or that these computer capabilities were other than as described in N.C.R.'s sales literature. It is urged that liability should rest upon Rasmussen's alleged assurances that the relatively slow print-out rate was not important and had no practical significance.[1]

■ The Washington law on civil fraud was recently summarized in Baertschi v. Jordan, 68 Wash.2d. 478, 413 P.2d 657, 660–61 (1966):

"It is well settled law in this state that in order to recover for fraud, the following must be proved: (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely on it; (9) his consequent damage. Swanson v. Solomon, 50 Wash.2d 825, 314 P.2d 655 (1957).

"The burden is upon plaintiff to prove the existence of all these essential and necessary elements that enter into its composition. All of the ingredients must be found to exist. The absence of any one of them is fatal to a recovery. Puget Sound National Bank v. McMahon, 53 Wash.2d 51, 330 P.2d 559 (1958).

"This court has repeatedly held that fraud is never presumed, but must be proved by clear, cogent and convincing evidence. Brown v. Underwriters at Lloyd's, 53 Wash.2d 142, 332 P.2d 228 (1958); Ramsey v. Mading, 36 Wash.2d 303, 217 P.2d 1041 (1950); Dobbin v. Pacific Coast Coal

[1]. It is unnecessary to decide if this particular "misrepresentation" was a misrepresentation of fact or the expression of a salesman's opinion in the nature of "puffing."

Co., 25 Wash.2d 190, 170 P.2d 642 (1946)."

See also Williams v. Joslin, 65 Wash.2d 696, 399 P.2d 308, 308–09 (1965).

▮ Although Fluaitt had knowledge at the time of the purchase of the slow print-out rate of the equipment, he claimed that he was otherwise unfamiliar with the NCR390 and relied on representations by Rasmussen that the print-out rate was not significant or important and that the NCR390 was suitable, appropriate, and adequate for service bureau work. Since the basic complaint involved the computer's slowness, Fluaitt, in the light of his knowledge, had no right to rely on representations of the adequacy of the machine to complete the work required of it. Food Industries cites a long list of Washington cases establishing the principle that where a purchaser suspects some defect but is dissuaded from investigating the matter by deceitful assurances of the vendor, the purchaser may rely on the assurances without further investigation. See, e. g., Boonstra v. Stevens-Norton, Inc., 64 Wash.2d 621, 393 P.2d 287 (1964); Holland Furnace Co. v. Korth, 43 Wash.2d 618, 262 P.2d 772, (1953); Jenness v. Moses Lake Development Co., 39 Wash.2d 151, 234 P.2d 865 (1951); Rummer v. Throop, 38 Wash.2d 624, 231 P.2d 313 (1951); Miraldi v. Wick, 117 Wash. 207, 200 P. 1094 (1921). An examination of these authorities reveals a general policy to allow relief to a victim of fraud despite his own negligence in relying on certain misrepresentations. Coson v. Roehl, 63 Wash.2d 384, 387 P.2d 541, 544 (1963). The rule applies when there has been a misrepresentation of facts peculiarly within the speaker's knowledge. Jenness v. Moses Lake Development Co., supra, 234 P.2d at 869. The general rule of these cases does not, therefore, operate in favor of a vendee who *knows* of a defect. Even were we to assume that Rasmussen misrepresented a defect, Fluaitt *knew* of the problem which constituted his basic complaint, that the computer's print-out rate was slow. We have here two sophisticated businessmen, dealing at arms' length. Fluaitt was in as good a position as Rasmussen, if not a better one, to foresee the effect of a slow print-out rate on the business operations of his own company. In Graff v. Geisel, 39 Wash.2d 131, 234 P.2d 884 (1951), we read, at 890, the following:

"In Bliss v. Clebanck, 136 Wash. 32, 238 P. 979, we stated in effect that although a vendee to whom representations of material facts are made may have an opportunity of ascertaining their truth for himself, ordinary prudence and diligence do not require him to do so where the facts (a) were peculiarly within the knowledge of the vendor, (b) were not known by the vendee, (c) could not be ascertained readily by the latter; and where the vendor intended that the representations should be acted upon by the vendee. In Oates v. Taylor, 31 Wash.2d 898, 904, 199 P.2d 924, 928, we suggested that lack of business experience of the vendee was a factor to be considered but indicated that a vendee, ' * * * cannot be permitted to say that he was taken advantage of, if he had means of acquiring the information, or if, because of his business experience or his prior dealings with the other, he should have acquired further information before he acted.' "

■■ Fluaitt admitted that the computer could probably have been profitably operated had his company developed sufficient business. This strongly indicates that Food Industries' essential grievance concerning the NCR390 stemmed from its failure to obtain additional business for which it had hoped. This leads to consideration of Food Industries' even weaker position concerning the alleged promise by Rasmussen that N.C.R. would, in the future, obtain such a sufficient number of customers for Food Industries that the service bureau could operate profitably. Such promises constitute nothing beyond present statements of intent. These cannot satisfy the first necessary element of actionable fraud, misrepresentation of an

existing fact, unless there existed a present intent not to attempt the future fulfillment of the promises. Shook v. Scott, 56 Wash.2d 351, 353 P.2d 431 (1960); Webster v. L. Romano Eng'r Corp., 178 Wash. 118, 34 P.2d 428 (1934); Jacquot v. Farmers' Straw Gas Producer Co., 140 Wash. 482, 249 P. 984 (1926). There was no proof, even by inference, that Rasmussen, at the time of the allegedly fraudulent transaction, then entertained the intent *not* to refer additional customers to Food Industries.[2] This is understandable, since the record reveals that Rasmussen *did* obtain customers for Food Industries, although apparently not enough to solve its problems.

 N.C.K.'s motion for dismissal in a jury case, since the 1963 amendment to Rule 41(b) of the Federal Rules of Civil Procedure, is more properly treated as a motion for directed verdict under Rule 50(a). Wolf v. Reynolds Elec. & Eng'r Co., 304 F.2d 646, 648–649 (9th Cir. 1962). "Whether the motion to dismiss be made pursuant to Rule 41(b) or 50(a), the same rule is applied in determining whether the plaintiff has made a case for the jury." Id. at 649. Viewing the evidence most favorably to Food Industries and giving it the benefit of all reasonable inferences, our task is to determine whether or not, had there been a verdict for Food Industries based on the Washington standard of clear, cogent, and convincing evidence, the evidence would have been sufficient to sustain that verdict. See Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Brady v. Southern R. R., 320 U.S. 476, 479–480, 64 S. Ct. 232, 88 L.Ed. 239 (1943); Poston v. United States, 396 F.2d 103, 106 (9th Cir. 1968).

We have carefully reviewed the record, and we are convinced that the District Court's conclusion was correct.

Affirmed.

2. Food Industries contends that Rasmussen admitted by his testimony that he had no intent to live up to his promise. Taken

in context, however, Rasmussen's denial of such intent followed his denial that he made any such promise whatsoever.